# MIECZSLAW  BARABASZ *vs.* VINCENT  KABAT.

*Master and Servant—Agency—Liability of Master for Torts of Ser-*
*vant Within the Scope of Employment—Assault and Battery—*
*Arrest Ordered by a Doorkeeper.*

A master is liable to third persons for the wrongful acts of his servant
done within the scope of his employment, although the master did
not know of or authorize such acts.

Where a master directs his servant—a doorkeeper—not to admit any
person to a certain building unless provided with a ticket, but does
not expressly or impliedly authorize the servant to cause persons
attempting to enter without tickets to be arrested, then the master is
liable if the doorkeeper should use an unnecessary degree of vio-
lence in preventing the entrance of a person without a ticket. But
the master is not liable if the doorkeeper should cause a person so
attempting to enter to be arrested by the police who are present and
able to determine for themselves whether an arrest would be justi-
fiable or not, because in so doing the doorkeeper is not acting within
the scope of his employment.

In consequence of scenes of disorder and violence which had occurred
in a church, the pastor thereof required that those entering the build-
ing upon a certain day should have tickets of admission. Under the
circumstances this was a reasonable regulation. On the day in ques-
tion there was a doorkeeper at the church, appointed by the pastor,
with directions from him to admit only persons provided with tickets.
A large crowd was about the church and a number of policemen
were on duty. The plaintiff's wife attempted to enter forcibly with-
out a ticket when the doorkeeper pushed her away and she was
arrested by a policeman, carried to a police station and detained for
some hours. Plaintiff sued the pastor for assault and battery upon
his wife and for false imprisonment, whereby he lost her services, etc.,
and incurred expense for medical treatment. The defendant had
not authorized the doorkeeper to cause any arrest to be made. *Held,*

1st. That if the doorkeeper used more force than was reasonably neces-
sary to prevent plaintiff's wife from entering the church and the
injuries complained of were occasioned by his violence, then the de-
fendant is liable, because in so doing the doorkeeper was acting
within the scope of his employment, but since the evidence showed
that the injuries suffered by the plaintiff's wife may have been occa-
sioned after she was taken into custody by the police, it was error to
grant an instruction to the jury by which a recovery against the de-

fendant was had upon the mere finding that the doorkeeper had used an unnecessary degree of force.

2nd. That if the doorkeeper caused plaintiff's wife to be arrested merely because she attempted to enter the church without a ticket, such arrest was unjustifiable, but the defendant would not be liable therefor or for injuries sustained while she was in the hands of the police, the order for the arrest not being within the scope of the doorkeeper's employment and not having been authorized by the defendant.

Appeal from a judgment of Baltimore City Court (PHELPS, J.) At the trial the defendant offered the following prayers:

*Defendant's 1st Prayer.*—If the jury believe from all the evidence that James Gibbons, the Roman Catholic Archbishop of Baltimore, and his successor in the Archiepiscopal See of Baltimore, according to the discipline and government of the Roman Catholic Church, are the owners of the church edifice on Eastern avenue, in the city of Baltimore, known as the Holy Rosary Church, and that by appointment of said Archbishop the defendant, Mieczyslaw Barabasz is the pastor of said church and in charge of the same and the congregation worshipping at said church, and that said pastor had difficulty in the collection of the rents of pews in said church and had been personally attacked by certain persons in said church and also made the object of ridicule during church services by persons attending said church, and that said pastor made a rule or regulation that all persons who desired to attend services in said church should provide themselves with tickets and show these tickets at the door of the church, in order to ensure, if possible, the collection of said pew rents and the decent and decorous attendance upon public services in the future, as well as to protect himself from personal danger, and that such ticket could be obtained by any person desiring the same upon application at the pastor's residence or from certain persons known as members of the church committee, that then such rule or regulation was a reasonable and proper one to be made by said pastor, and if the jury further find that said rule had been announced in church before it went into force, and that Rosa Kabat, the wife of the plaintiff, was a mem-

ber of the Holy Rosary Church, and was either present in the church when said rule was announced or knew of the same, and that on November 5th, 1893, she came to the said church with the intention of going into said church, at the late morning service, and was refused admission to said church unless she produce such a ticket as aforesaid, and that she thereupon was removed from the steps of said church by certain police officers stationed at said church to preserve the public peace, and was a short time afterwards arrested by certain police officers on the charge of disturbing public worship, and that Joseph Molis did not strike her or beat her or give her into custody on this charge, that then there can be no recovery in this case by the plaintiff, and the verdict of the jury must be for the defendant. (Rejected).

*Defendant's 2nd Prayer.*—If the jury believe from the evidence that on November 5th, 1893, there was in force a rule or regulation at the Holy Rosary Church, on Eastern avenue, in Baltimore City, requiring persons desirous of attending divine service to provide themselves with tickets which were required to be shown at the door upon entering said church in order to entitle a person to enter said church, and that said Rosa Kabat, the wife of the plaintiff, was a member of said church and knew of said rule or regulation, and that on November 5th, 1893, she attempted to enter the said church and was refused entrance to said church by one of the doorkeepers placed at the door to enforce said rule, and upon her refusal to conform to said rule or regulation she remained in front of the door of said church and was removed therefrom, at the request of said doorkeeper, by certain police officers, who were then and there present, in order that the entrance way to said church might be unobstructed, and was subsequently arrested by certain police officers upon the charge of disturbing public worship at said church, that then there can be no recovery in this case against the defendant, and the verdict of the jury must be for said defendant. (Rejected).

*Defendant's 3rd Prayer.*—The burden of proof rests upon the plaintiff to establish by a preponderance of testimony satisfactory to them that the assault on and battery of the plaintiff's wife, mentioned in the first count of the declaration of the plaintiff, was made by Joseph Molis, the agent, or servant of the defendant, as well as that the loss by the plaintiff of the services of his wife and of the comfort of her society and the expenses of medicine and medical attention mentioned in said declaration, were caused thereby, and if the testimony in this case should be such as to leave the minds of the jury in a state of equipoise as to whether said assault and battery were made by the said servant or agent of the defendant, that then their verdict must be for the defendant under the first count of the declaration. (Rejected).

*Defendant's 4th Prayer.*—The burden of establishing the facts that the assault on and battery of the plaintiff's wife were made by Joseph Molis, the agent or servant of the defendant, and that the imprisonment was caused by said agent or servant of the defendant, as alleged in the second count of the declaration of the plaintiff, rests upon the plaintiff in this case, and if the testimony in this case should be such as to leave the minds of the jury in a state of equipoise as to whether said assault and battery were made or said imprisonment caused by the said servant or agent of the defendant, that then their verdict must be for the defendant under the second count of the declaration.    (Rejected).

*Defendant's 5th Prayer.*—If the jury believe from all the evidence that the plaintiff's wife, Rosa Kabat, sustained the injuries mentioned in the evidence while in the hands of certain police officers of the city of Baltimore, who were removing her from the steps of the Holy Rosary Church so as to prevent the obstruction of the same, or while conveying her to the station-house on Bank street upon the charge of disturbing public worship at said church, preferred against her by a certain Ambrose A. Ryan, a sergeant of police in Baltimore City, that then there can be no

recovery by the plaintiff in this case against the defendant, and the verdict of the jury must be for the defendant. (Rejected).

*Defendant's 6th Prayer.*—That there is no evidence in this case legally sufficient to show that the defendant, Mieczyslaw Barabasz, personally made the assault and battery upon or procured the imprisonment of Rosa Kabat, the wife of the plaintiff, as alleged in the first and second counts of the declaration of the plaintiff, and that there can be no recovery under said counts against the said defendant, unless the jury find that said assault and battery was made or said imprisonment was procured by Joseph Molis, the agent of the defendant, while acting for the defendant and with his authority about the matter for which said agent was employed by the defendant; and if the jury find that Joseph Molis was the doorkeeper at the said church, appointed by the defendant to see that only persons having tickets might enter said church, and that, in keeping out Rosa Kabat, the wife of the plaintiff, if they so find, he used no more force than was necessary, that then there can be no recovery in this case by the plaintiff.    (Rejected).

*Defendant's 7th Prayer.*—If the jury believe from the evidence that the defendant, Mieczyslaw Barabasz, was the pastor of the Holy Rosary Church, on Eastern avenue, in Baltimore, and had charge of the said church and the temporalities thereof, and that Rosa Kabat, the wife of the plaintiff, was a member of said church, and attended religious services of said church, and that the pastor of said church, in order to ensure as far as possible the decent and orderly attendance at religious services and the collection of the revenues of the church and the protection of the said pastor from personal violence had established a rule or regulation that all persons desiring to enter said church should obtain a ticket from the pastor or a committee appointed by him and show the same at the door when going into said church, and that said Rosa Kabat knew of said rule or regulation when, on the 5th day of November, 1893,

she presented herself at the door of said church and demanded entrance thereto and was refused entrance because she did not produce and show a ticket, and that she remained on the steps of the church and tried to force her way into the church, and that said John Molis, who was the doorkeeper at said church, prevented her going in, and in so doing thrust or pushed said Rosa Kabat back from the door of the church, and that she was thereby injured, still there can be no recovery in this case by the plaintiff if the jury find all the foregoing facts, if they further believe that said Rosa Kabat contributed to the injuries she sustained by her endeavor to force her way into said church. (Rejected).

*Defendant's 8th Prayer.*—That under the pleadings in this case the plaintiff cannot recover any damages for the personal injuries sustained by his wife, Rosa Kabat, if they find she sustained the injuries testified to by the witnesses of the plaintiff, nor for her pain or suffering caused thereby, nor for the mental pain or suffering of the plaintiff himself because of his wife's injuries or the subsequent birth of a dead child, if they find these facts, and that they can only give him, by way of damages, such sum as they may believe from all the evidence to be the fair pecuniary value of the services of his said wife and of the medicines and medical attention supplied to her during the time he was deprived of her said services as the direct and necessary consequence of the injuries sustained by her and such sum as would fairly compensate him for the loss of the comfort of her society during the time he was deprived of the same by reason of said injuries to his wife, if the jury find all these facts, and that the jury can not give the plaintiff anything by way of punitive or exemplary damages, nor damages for any injury to his wife, which was directly occasioned by her own act, if any such they find.   (Granted as modified).

In lieu of the prayers rejected on both sides, the jury was instructed as follows

By the Court:

1. If you find from the evidence that one Joseph Molis acted as doorkeeper of the church by appointment of the defendant as its pastor, with instructions to admit only persons provided with tickets of admission, and that while so acting the plaintiff's wife presented herself for admission without such ticket; and if you further find that said Molis laid his hand upon the plaintiff's wife, using more force than was reasonably necessary under the circumstances to keep her out or to prevent obstruction of the passage to the church door, then the plaintiff is entitled to recover.

2. If you find that the plaintiff's wife, while acting in a quiet and orderly manner, without in any wise disturbing the peace of the congregation or unreasonably obstructing the entrance to the church, was arrested and held in custody by the police, at the instance of said Joseph Molis, while acting as doorkeeper as above stated, for no other reason than for presenting herself at the church door without a ticket, then the plaintiff is entitled to recover.

3. The burden is upon the plaintiff to establish to your satisfaction, by a preponderance of proof, every fact stated as necessary to entitle him to recover, under each instruction severally, as well as the fact that the several injuries complained of were directly occasioned thereby.

The jury returned a verdict for the plaintiff for $1,500. Upon a motion for a new trial the Court ordered the same to be granted unless plaintiff accept a reduction of the verdict to $500. Plaintiff accepted the reduction and judgment was entered for $500.

The cause was argued before McSherry, C. J., Bryan, Briscoe, Roberts and Boyd, JJ.

*Charles W. Heuisler* (with whom were *Jos. S. Heuisler* and *Frederick C. Cook* on the brief), for the appellant.

*Thos. Ireland Elliott* and *Howard M. Emmons* (with whom was *William E. Schloegel* on the brief), for the appellee.

BOYD, J., delivered the opinion of the Court.

The appellee sued the appellant and James Gibbons, Roman Catholic Archbishop of Baltimore for the time being, a corporation sole, for an assault and battery on his wife and causing her to be imprisoned, whereby he alleges he lost her services and the comfort of her society and incurred expense for medical attention and medicines. There are two counts in the declaration, the first being for an assault and battery and the second for false imprisonment. It was not pretended at the trial that either of the defendants personally committed the assault or procured the arrest of Mrs. Kabat, but the plaintiff sought to hold them responsible for the acts of one Joseph Molis, who was alleged to be the agent of the defendants. At the conclusion of the plaintiff's testimony, the Court below instructed the jury that there was no legally sufficient evidence to establish any liability on the part of the defendant corporation and a verdict was at once entered accordingly. The case then proceeded against the appellant alone, resulting in a verdict against him.

He was at the time of the alleged assault and imprisonment the pastor of the Holy Rosary Church in the city of Baltimore, having been appointed by Cardinal Gibbons, Archbishop of that arch-diocese. The evidence showed that according to the discipline and government of the Roman Catholic Church the pastor " is the administrator and agent of the Archbishop, who is considered as the owner of the church property." He has charge of the "temporalities" of the church—that is to say, the revenues of the church derived from pew rents, Sunday and other collections, graveyard charges, school fees and donations. Some of the parishioners of the appellant took a very decided stand against him, and he seems to have had some very troublesome and unruly people in his congregation. Without undertaking to give in detail all that occurred, it was shown that the appellant had been assaulted and otherwise maltreated by some of them in the church, as well as elsewhere. Their

conduct indicated an utter disregard for the house of God
as well as a total lack of respect for their pastor.   At times
they not only interfered with public worship, but their lan-
guage and treatment of the appellant could well have led
him to believe that his personal safety was not assured when
some of the unruly ones were present.   It became neces-
sary for him to seek the protection of the police, and he
finally determined that it would be best to require those de-
siring to enter the church to have tickets of admission.   It
was duly announced that this would be required and it was
stated where they could be procured.   On November 5,
1893, the day on which the alleged assault and imprison-
ment took place, this practice was begun.   Tickets were
furnished to those applying at the priest's house, which was
adjoining the church, as well as by members of the com-
mittee who had them, and doorkeepers were stationed at
the doors to require those seeking admission to exhibit them.
The appellant in his testimony gave several reasons for
adopting this course, but as we understood the attorneys
for the appellee to practically concede at the argument that
under all the circumstances it was a reasonable regulation,
it will be unnecessary for us to discuss it at length.   The
appellant was certainly justified in resorting to some plan
that would have a tendency to exclude the disorderly mem-
bers of his congregation who had been giving trouble them-
selves and had been inciting others to acts that were not
only liable to bring reproach upon the church, but to cause
a breach of the peace.   The protection of the city police
had been required at the services of the church since July
30th, 1893.   Those desiring to enter the church for legiti-
mate purposes could readily obtain tickets, and under ex-
isting circumstances we think it could well be conceded that
the means adopted by the appellant to preserve order, pro-
tect himself from insult and possible injury and the church
from desecration were reasonable and proper.   On Novem-
ber 5, 1893, an immense crowd gathered in the street in
front of the church—some of the witnesses numbered them

by the hundred, others by the thousand. Many were doubt-less there from curiosity, some desired to enter the church from proper motives, but that there were others there who were bent on mischief cannot be doubted. The police force on duty was considerably increased, and some of the police-men were assaulted and beaten in a manner that indicated that murder was more prominent than religion in the hearts of some of those present.

When Mrs. Kabat presented herself at the door of the church Joseph Molis was there as a doorkeeper, having been appointed by the appellant. He demanded a ticket of her, but she had none. The evidence is somewhat conflicting as to what occurred, but that on the part of the plaintiff shows that she tried to go into the church and Molis pushed her back. Lawrence Loubya, one of the plaintiff's wit-nesses, said "she was trying to go in when Molis pushed her off." Frank Zielski said, "when she tried to enter by force he (Molis) pushed pretty strong toward the pave-ment." She was talking in a loud tone and was evidently very much excited. Several policemen took hold of her, and according to her evidence dragged her down the steps and took her to the police station where she was held for some hours. At the conclusion of the plaintiff's testimony prayers were offered on behalf of the appellant, which if granted would have taken the case from the jury. They were rejected, but as we do not find any exception to that ruling, we will proceed at once to the consideration of the other rulings of the Court.

The first exception was to the refusal of the Court to permit a question to be asked one of the plaintiff's witnesses, but it has not been pressed in this Court. After the con-clusion of all the testimony, the plaintiff offered five prayers and the defendant eight, all of which were rejected except-ing the defendant's eighth, and the Court in lieu of the rejected prayers gave instructions of its own. The eighth, which was granted, was in reference to the measure of dam-ages in case the plaintiff recovered.

The instructions of the Court were divided into three parts, the first being applicable to the first count, the second to the second count, and the third having reference to the burden of proof. By the first the jury was instructed that if they found " that one Joseph Molis acted as doorkeeper of the church by appointment of the defendant as its pastor, with instructions to admit only persons provided with tickets of admission, and that while so acting the plaintiff's wife presented herself for admission without such ticket ; and if you further find that said Molis laid his hands upon the plaintiff's wife, using more force than was reasonably necessary under the circumstances to keep her out, or to prevent obstruction of the passage to the church door, then the plaintiff is entitled to recover." It being shown that Molis was appointed doorkeeper by the defendant with instructions to only admit those who had tickets, it would seem clear that he was acting within the scope of his employment when he refused to admit Mrs. Kabat unless she produced a ticket. Molis testified " that he was placed at the door by Father Barabasz, who told him if they had tickets to let them in, and if they had no tickets to keep them out " If we assume, as we may well do, that the defendant did not intend Molis to use more force than was necessary, and even went so far as to forbid him from using any force, he cannot, for those reasons alone, be relieved from liability for the acts of Molis. As his employment was to keep those out who had no tickets, his master or principal was liable if he used more force than was reason ably necessary for that purpose, to the injury of a third person, because the act was done in the course of the master's service and for his benefit, within the scope of his employment. The principle is well stated in *Evans* v. *Davidson*, 53 Md. 245. JUDGE ALVEY, in delivering the opinion of the Court, said : " In one sense where there is no express command by the master, all wrongful acts done by the servant may be said to be beyond the scope of the authority given, but the liability of the master is not deter-

mined upon any such restricted interpretation of the author-
ity and duty of the servant.    If the servant be acting at
the time in the course of his master's service and for his
master's benefit, within the scope of his employment, then
his act, though wrongful or negligent, is to be treated as
that of the master, although no express command or priv-
ity of the master be shown."    And this Court in *Tome's
case*, in 39 Md. 36, and in *Western Maryland R. R. Co.* v.
*Franklin·Bank*, 60 Md. 36, approved the statement of *Story
·on Agency* that the principal is " liable to third persons in a
civil suit for the frauds, deceits, concealments, misrepresen-
tations, torts, negligences and other malfeasances or mis-
feasances and omissions of duty of his agent, in the course
·of his employment, although the principal did not authorize
·or justify, or participate in, or indeed know of such miscon-
duct, or even if he forbade the acts, or disapproved of them.
In all such cases the rule applies, *respondeat superior*, and it
is founded upon public policy and convenience."    But
although those principles are well established in this State,
as well as elsewhere, yet under the facts of this case the
·above instruction was erroneous.    The testimony shows
·very clearly that most of the injury to Mrs. Kabat com-
·plained of may have been, and most probably was sustained
·after the police took charge of her and not by Molis laying
his hand on her, even if done in the violent manner that
·some of the plaintiff's witnesses speak of.    The plaintiff
·was only entitled to recover for the loss of the services of
his wife and of her society and for the expense he had in-
·curred, and if the acts of Molis referred to in that instruc-
·tion did not cause such injuries to Mrs. Kabat, as to produce
·some of those results, the plaintiff was not entitled to
recover at all.    It was therefore error to allow a recovery
on the finding of the fact that Molis laid his hands on the
plaintiff's wife, using more force than was reasonably neces-
sary, which this instruction practically did, as there was no
·controversy about the other questions contained in it.    Nor
·did the granting of the eighth prayer of the defendant cor-

rect this error, as it only applied to the measure of damages, if the jury found for the plaintiff, whilst the Court's instruction told them under what circumstances they could find for the plaintiff. The jury may have believed that Molis did use more force than was necessary, but may also have believed that the injuries sustained by Mrs. Kabat were caused by the treatment of the police after they had taken charge of her, and not by what Molis did, but there was nothing in the instruction granted that informed them that that would make any difference as to the right of the plaintiff to recover at all. Nor does the third instruction of the Court, in reference to the burden of proof, cure the defect in the first. After saying that if the jury found the facts set out in the first instruction the plaintiff was entitled to recover, it did not sufficiently protect the defendant to grant the third instruction, which, to say the least, was not very clearly stated.

The second instruction we also think was erroneous. Although we have said above the defendant might be liable for assault if Molis used more force than was reasonably necessary to keep Mrs. Kabat out or to prevent obstruction of the passage to the church door, for such damages as the plaintiff can recover, yet that is because the act of Molis was in the line of his employment. But we find nothing in the record that would justify us in saying or the jury in finding that the defendant ever in any way, expressly or impliedly, authorized Molis to have her arrested and held in custody for presenting herself at the church door without a ticket. Such an act, if done by Molis, was clearly not within the scope of his employment and no such authority can be inferred. Yet by this instruction the jury was told that if they found that the plaintiff's wife, while acting in a quiet and orderly manner, without in any wise disturbing the peace of the congregation, or unreasonably obstructing the entrance to the church, was arrested and held in custody by the police, at the instance of said Joseph Molis, while acting as doorkeeper as above stated, for no other

reason than presenting herself at the church door without a ticket, then the plaintiff is entitled to recover.   If Molis did have her arrested for that reason alone, it was wholly unjustifiable, but we know of no authority that would hold his principal responsible for that act under such circumstances as existed in this case.   The reasoning of the decisions of this Court in *Carter* v. *Howe Machine Company*, 51 Md. 290 ; *Tolchester Beach Company* v. *Steinmeier*, 72 Md. 313 ; *Baker's case*, 77 Md. 442 ; *Brewer's case*, 78 Md. 394 ; *Kirk* v. *Garrett*, 84 Md. 383, and cases cited by them, would seem to preclude a recovery from the defendant for such an act of Molis', and we will not cite other authorities on the subject.   The testimony shows that the police officers were sent there by the city authorities to preserve order, and they were eye-witnesses to what occurred.   They knew as well as Molis did what Mrs. Kabat was doing, and unless she was, in their opinion, violating the law, they had no right to arrest her.   Molis could give them no such right and certainly could not require them to arrest her.   It is not pretended that the defendant attempted to confer any express authority on Molis to have any one arrested, because he presented himself at the church door without a ticket, and such an authority cannot be implied.   There is nothing to suggest that he supposed an arrest would or could be made for such a cause, or that the police officers of the city would be guilty of such a flagrant violation of their duty as to do so, at the instance of Molis, although they knew as well as he did what had been done.

As we have intimated, the third instruction is not as clear as it might have been, but as we have already said the first and second, to which it referred, were erroneous, we need not discuss it further.

Being of the opinion that the defendant is not liable for the arrest of Mrs. Kabat, even if it was made at the instance of Molis, as it was not within the scope of his employment, some of the prayers offered by the defendant may not be applicable at a new trial of the case, but we will very briefly

refer to those that were rejected. The first embraces some matters that are now immaterial, and it did not fairly present the question as to whether Molis assaulted Mrs. Kabat by forcibly pushing her away. The second leaves out of consideration the theory of the plaintiff that there was an assault by Molis by the use of more force than was necessary. The third ought to have been granted. The fourth is not now material. The expression " if the testimony in this case should be such as to leave the minds of the jury in a state of equipoise" might be improved on, but this Court said in *Ohlendorf* v. *Kanne*, 66 Md. 495, that a prayer which contained that same expression ought to have been granted. As the defendant was not responsible if Molis did ask a policeman to arrest Mrs. Kabat, the fifth prayer, if sustained by the proof, presents a proper defence to the suit. For if the injuries complained of were sustained by Mrs. Kabat while she was in the hands of the police, then, as we have already said, the plaintiff could not recover. The sixth referred to both counts in the beginning and then concluded with reference to matters that only affected the first. By changing it so as to make it applicable to the charge of assault, it can be made a good prayer. The seventh was properly rejected. It would be misleading and ignores the important question as to whether Molis used more force than necessary.

For the reasons we have given the judgment must be reversed. As the case now stands before us, there can be no recovery against the defendant on the second count, but as on a new trial other evidence may be introduced, and as the plaintiff would be entitled to recover under the first count, if he can establish the fact that Molis did use more force than was necessary, and *thereby* caused the injuries for which the plaintiff can recover damages, a new trial must be granted.

> *Judgment reversed and new trial awarded with costs to the appellant.*

(Decided June 22nd, 1897).