## ARMENDAREZ v. HOTEL DIEU.

(Court of Civil Appeals of Texas. San Antonio. March 20, 1912. Rehearing Denied April 17, 1912.)

1. CHARITIES (§ 45*)—RELIGIOUS SOCIETIES—TORTS—LIABILITY.

A religious corporation organized to operate a hospital is not exempted from liability for injury sustained by an employé through negligence chargeable to it, though money received in payment for services was expended in maintaining the institution for the benefit of the poor to pay off a mortgage on its property, and to support its mother institution located in another state.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 80, 81, 102–104; Dec. Dig. § 45.*]

2. EXEMPTIONS (§ 33*)—HOSPITALS OF RELIGIOUS SOCIETIES.

The property of a religious corporation organized to maintain a hospital is not exempt from execution, though the services of the hospital are given free to those who cannot pay, and all sums received for services are expended in the maintenance of the establishment, the payment of a mortgage debt and of an annual sum for the maintenance of the mother organization located in another state.

[Ed. Note.—For other cases, see Exemptions, Cent. Dig. § 35; Dec. Dig. § 33.*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Action by Ramona Armendarez against the Hotel Dieu. From a judgment on a directed verdict for the defendant, plaintiff appeals. Reversed and remanded.

Ralf Border, of El Paso, for appellant. T. A. Falvey and P. H. Clarke, both of El Paso, for appellee.

JAMES, C. J. This petition of Ramona Armendarez against appellee, a private corporation existing under the laws of Texas operating a hospital in the city of El Paso, set forth allegations which ordinarily would, without question, state a valid cause of action against the master for damages for personal injury received by an employé. The court, after hearing the testimony, directed the jury to find for the defendant.

Examination of the testimony satisfies us that the peremptory instruction was not given upon the theory of lack of testimony of the employer's negligence and of such negligence being the cause of injury to plaintiff's hand. The testimony was sufficient to carry the case to the jury, in that respect. It is evident from the briefs that the charge and verdict have their sole support in the view that the defendant corporation was, from the nature of its purposes and business, exempt from liability for the matter asserted in the petition.

Defendant's charter was filed with the Secretary of State in July, 1892, for the following named purposes: "The erection and maintenance of a hospital in El Paso, Texas, at which the members of the corporation will administer to the sick and afflicted of all nations, and to enable its members to receive the sick, the helpless and the afflicted and to nurse and care for them and to alleviate their pain and suffering, and to restore them as far as possible to health." The corporation was "to have power to purchase in its corporate name all property necessary for the erection and proper maintenance of the hospital and to make and enforce all necessary by-laws, rules and regulations for its proper treatment." The signers and officers named in the charter were Sisters of Charity (whose central house was then at Emmetsburg, Md.), and it was provided that only Sisters of Charity of the same society could be members, and removal by death or by Superiors at Emmetsburg should be sufficient. There was no capital stock. It was shown that these institutions of this order are all over the United States, and all one and the same; that the head institution at Emmetsburg has been divided into the Eastern and Western, and the defendant now reports to the institution at St. Louis, which institution sends persons down at times to investigate the affairs of defendant.

Sister Mary Joseph testified, among other things: That the business of the Sisters is to take care of the sick and get no pay at all, and do not expect any. The money that comes in from the hospital does not go to the Sisters. "It goes to the expenses of the house. * * * I do not know what becomes of the money if there is any surplus. * * * The rooms on the first floor run from $15 to $35 a week. * * * The prices on the next floor are the same as on the first floor. That is true all over the house, except the wards, which are $12 for private patients and $10 for railroad patients. By 'ward' I mean a room in which there is more than one bed. * * * The railroads send us their patients. They pay us $10 a week for their patients. * * * There are no $12 rooms upstairs. You cannot get a room for less than $12 upstairs. * * * They do not take charity patients on the second or third floors. * * * When patients are brought into the hospital, we do not know whether they are paid patients or charity patients. We just take them in. A charity patient would get whatever room was needed for his benefit just the same as a paid patient would. They get the same accommodations. A patient going in there, not being able to pay, would get the same care that a paid patient would. I know if a person goes in there too poor to pay, he would be taken care of just the same way as a paid patient. I know that because it is one of our rules. A person that has money we charge them. We would rather have poor patients than patients who are able to pay. * * * They put the charity patients on the first and fourth floors. The arrangements

and accommodations are just as good and comfortable as on the second and third floors. Prices are higher on the second and third floors than on the first and fourth, because they are private rooms. This is the only reason why they are higher. The $35 room has a bath attached and a $15 room has not. * * * When I said that we would rather take charity patients, I was not speaking for myself. I was speaking for the order. The poor is our work."

Sister Augustine testified that they gave their services to the sick without regard to religion; that they received others besides the poor, but their prime object was to take in the poor; that they had never sent a charity patient away, and, if necessary, would put him in a $35 room, and had never had occasion to remove a paid patient to accommodate a poor one. Sometimes would, if necessary, put two or three charity patients in a room. This witness testified: "The money that is received is used to take care of the charity patients. * * * I know that the money is used to support the poor. We never invest in any property. We are paying off a mortgage somewhere in St. Louis. The surplus that we have here we send to St. Louis to pay off the mortgage (given for an addition to Hotel Dieu). I know that money is remitted from here to St. Louis, but I do not know in what amounts. The St. Louis house is our mother house. They cannot run the institution, the mother house, if we do not send them the money. We have to support and keep up the institution in order to support the poor."

Sister Felicitas testified that she was the secretary of the corporation, and kept its books; that it owns its building and site and owes a mortgage of $13,000 on it, which is being paid off; that they charge patients who have money; that there was something over $40,000 income of the hospital the previous year, and it did not take that much to provide for the charity patients; that the net income was $2,618.08, the difference between expenses and gross income; that there may be a contribution of $10,000 or $15,000, but the rest of the income was derived from the paid patients; that the income to-day is higher than it has ever been; that the railroads pay $10 a week for their patients; and that the surplus is sent to the mother house.

The above statement from the testimony is given to show the purpose for which the defendant corporation exists and its practical working. That it is engaged, in part, in the business of caring for patients who are charged for the accommodations and care they receive, is evident from the testimony. It is, nevertheless, true that without this the institution would have no income with which to maintain itself in the work of the order in caring for those unable to pay. The charging of persons who are able to pay is the necessary means by which the ultimate object of the order is attained, which is to care for the destitute sick, to which exalted work the members of this corporation are pledged to devote their lives.

[1] The question we have to decide is whether or not the law of master and servant, as it prevails in this state, is to be applied to the defendant, in view of its character as a charitable institution. The defendant is a creature of the state, which has permitted it to incorporate for the purpose desired by it under a statute which vested it with capacity to sue and be sued. An object of the incorporation was to carry on a business, in order that the institution might obtain funds, to enable it at the same time to accomplish its charitable work. In order to conduct its business, it naturally was proper and necessary for it to have employés, and to thus assume the relation of master and servant, which it did by employing this plaintiff. The law of master and servant, involving the duties it imposes on the master and his liability for injuries resulting from the nonobservance of such duties, permeates and reaches every situation in the affairs of men in which that relation is assumed. This defendant, it appears from the evidence, conducted its affairs for the combined purposes of revenue and charity; the former being, in the religious aims of the members, subordinated to the latter as the ultimate object. But independently of this, had this corporation derived no revenues from its operations, and the funds which enabled it to carry on its benefactions were derived, not from its beneficiaries, but from endowments or contributions, it would not in our opinion make a particle of difference in its attitude to the law with reference to its legal duties and liabilities to persons in its service as employés. It was an incorporated body, chartered by its own volition, endowed with power to employ servants, and with the capacity to sue and to be sued. It was not in any sense an agency of the state, nor has the Legislature seen fit to extend to such corporations exemption from the well-known duties and liabilities imposed by the general law governing master and servant. This being so, defendant would be liable for injury sustained by its employé due to the negligence, if any, of itself, its managing officers, or agents or vice principals, which is the case presented here. Hordern v. Salvation Army, 199 N. Y. 233, 92 N. E. 626, 32 L. R. A. (N. S.) 62, 139 Am. St. Rep. 889; Bruce v. Central Meth. Episcopal Church, 147 Mich. 230, 110 N. W. 951, 10 L. R. A. (N. S.) 74, 11 Ann. Cas. 150; Hewett v. Women's Hospital Aid Association, 73 N. H. 556, 64 Atl. 190, 7 L. R. A. (N. S.) 496.

[2] We regard, as equally without merit, the contention that the property of this defendant is exempt from execution by reason

of its character; and that, therefore, recovery against it on this petition would be of no effect.

Reversed and remanded.