[Civ. No. 4347.  Second Appellate District, Division Two.—May 28, 1927.]

PHOENIX ASSURANCE COMPANY, LTD., OF LONDON (a Corporation), Respondent, v. THE SALVATION ARMY (a Corporation), Appellant.

[1] CHARITIES — NEGLIGENCE OF SERVANTS OR AGENTS—PERSONAL INJURIES—AUTOMOBILES.—A charitable corporation is liable, as any other corporation, for personal injuries to third persons caused by the negligence of its servants and agents in the operation of an automobile used for the purpose of engaging in a part of the religious and charitable work which it is the object of such corporation to perform.

(1) 11 C. J., p. 375, n. 96.

APPEAL from a judgment of the Superior Court of Ventura County. Merle J. Rogers, Judge. Affirmed.

The facts are stated in the opinion of the court.

Floyd L. Anderson for Appellant.

Voltaire V. Perkins for Respondent.

1. Liability of charitable institution for torts of servants and agents, notes, 139 Am. St. Rep. 894; 4 Ann. Cas. 104; 11 Ann. Cas. 160; Ann. Cas. 1913E, 1129; Ann. Cas. 1915C, 586; Ann. Cas. 1916E, 253; Ann. Cas. 1918E, 1174; 23 L. R. A. 200; 7 L. R. A. (N. S.) 481; 10 L. R. A. (N. S.) 74; 22 L. R. A. (N. S.) 486; 32 L. R. A. (N. S.) 62; 42 L. R. A. (N. S.) 1144; 52 L. R. A. (N. S.) 505; 14 A. L. R. 572; 23 A. L. R. 923; 30 A. L. R. 455; 33 A. L. R. 1369; 42 A. L. R. 971. See, also, 5 Cal. Jur. 36; 5 R. C. L. 376 et seq.

WORKS, P. J.—This is an action to recover damages inflicted upon plaintiff's assignors by the. negligent operation of an automobile by a servant of defendant. Judgment went for plaintiff and defendant appeals.

It was stipulated at the trial that appellant is a charitable institution, and the record shows that at the time of the occurrences out of which the action arose the driver of the automobile was proceeding from one city to another for the purpose of engaging in a part of the religious and charity work which it is the object of appellant to perform. Appellant contends for a reversal of the judgment on the ground that, because of the purposes for which it exists, and because of the trust character of the funds which are at its disposal, it is exempt from that liability which would attach to a business or profit-making corporation in the situation which appellant occupies under the facts of the present litigation. Upon the question thus suggested the cases in the other states of the Union are in hopeless irreconcilability, and the decisions of the jurisdictions which are ranged on the respective sides of the controversy exhibit a width of discussion which has practically exhausted the subject. The line of reasoning on one side is, we think, strained and unconvincing, although the cases which follow it reach back to a greater antiquity than do those which support the opposite view. The courts of this state have never espoused either side of the discussion, for the exact question has never arisen here. The present case is one of first impression in California.

The states which have aligned themselves with the view which supports the contention of appellant, or, at least, some of them, are indicated by the following list of cases, in which is contained the last pronouncement, as far as we can discover, of the courts of each jurisdiction: *Parks* v. *Northwestern University*, 218 Ill. 381 [4 Ann. Cas. 103, 2 L. R. A. (N. S.) 556, 75 N. E. 991] ; *Loeffler* v. *Trustees of Sheppard Hospital*, 130 Md. 265 [L. R. A. 1917D, 967, 100 Atl. 301] ; *Zoulalian* v. *New England Sanitorium*, 230 Mass. 102 [L. R. A. 1918F, 185, 119 N. E. 686] ; *Whittaker* v. *St. Luke's Hospital*, 137 Mo. App. 116 [117 S. W. 1189], but see reservation in the opinion upon the question whether a charitable institution would be liable for damages occasioned by an act of negligence committed in a public street; *O'Neill*

v. *Odd Fellows' Home,* 89 Or. 382 [174 Pac. 148], but note
that the decision there rendered was based upon statutory
enactment; *Vermillion* v. *Woman's College,* 104 S. C. 197
[88 S. E. 649] ; *Gamble* v. *Vanderbilt University,* 138 Tenn.
616 [L. R. A. 1918C, 875, 200 S. W. 510], but observe that
the rule there stated as settled in the jurisdiction did not
apply to the facts of the case decided; *Bachman* v. *Young
Women's Christian Assn.,* 179 Wis. 178 [30 A. L. R. 448,
191 N. W. 751]. An opinion touching similar questions and
presenting a similar view is to be found in *Woman's Chris-
tian Library Assn.* v. *Fordyce,* 74 Ark. 621 [86 S. W. 417].
It has been decided in some cases that charitable institutions
which are governmental agencies are not liable for damages
caused by the torts of their servants. See *Gallon* v. *House
of Good Shepherd,* 158 Mich. 361 [133 Am. St. Rep. 387,
24 L. R. A. (N. S.) 286, 122 N. W. 631] ; *Fire Insurance
Patrol* v. *Boyd,* 120 Pa. St. 624 [6 Am. St. Rep. 745, 1
L. R. A. 417, 15 Atl. 553] ; *Wildoner* v. *Central Poor Dis-
trict,* 267 Pa. 375 [110 Atl. 175]. These last cases, we
think, present a question different from that here under
consideration.

One or two quotations will serve to show the reasoning of
the decisions generally which support the contention made
by appellant here. "An institution of this character, doing
charitable work of great benefit to the public without profit,
and depending upon gifts, donations, legacies, and bequests
made by charitable persons for the successful accomplish-
ment of its beneficial purposes, is not to be hampered in the
acquisition of property and funds from those wishing to
contribute and assist in the charitable work by any doubt
that might arise in the minds of such intending donors as
to whether the funds supplied by them will be applied to
the purposes for which they intended to devote them, or
diverted to the entirely different purpose of satisfying judg-
ments recovered against the donee because of the negligent
acts of those employed to carry the beneficent purpose
into execution" (*Parks* v. *Northwestern University, supra*).

In one of the outstanding opinions on the subject the
court said: "[T]he exemption of public charities from lia-
bility in actions for damages for tort rests . . . upon
grounds of public policy, which forbids the crippling or
destruction of charities which are established for the benefit

of the whole public to compensate one or more individual members of the public for injuries inflicted by the negligence of the corporation itself, or of its superior officers or agents, or of its servants or employees. The principle is that, in organized society, the rights of the individual must, in some instances, be subordinated to the public good. It is better for the individual to suffer injury without compensation than for the public to be deprived of the benefit of the charity. The law has always favored and fostered public charities in ways too numerous to mention, because they are most valuable adjuncts of the state in the promotion of many of the purposes for which the state itself exists. That being so, what difference can it make whether the tort is that of the corporation itself or the superior officers and agents, or that of its servants? Liability for the one would as effectually embarrass or sweep away the charity as the other. It would therefore be illogical to admit liability for the one and deny it for the other. This rule does not put such charities above the law, for their conduct is subject to the supervision of the court of equity; nor does it deny an injured person a remedy for his wrong. It is merely an exception to the rule of *respondeat superior*, which is itself based on reasons of public policy. The injured person has his remedy against the actual wrongdoer. It is said, however, that he may be and often is financially irresponsible. But the answer is that the law does not undertake to provide a solvent defendant for every wrong done. There are many cases of wrongful injury not compensated, because the wrongdoer is insolvent. The head of a family is liable for the torts of his servants; but you cannot take his homestead and break up his family to satisfy a judgment against him, either for his own or for his servant's torts. Public policy says it is better for the individual to suffer the injury uncompensated than for the state to suffer the evil consequences of having the homes and families of its citizens destroyed. The state is likewise most deeply interested in the preservation of public charities. Questions of public policy must be determined upon consideration of what on the whole will best promote the general welfare'' (*Vermillion* v. *Woman's College, supra*).

Here are some of the adjudications which stand in opposition to the contention made by appellant: *Bruce* v. *Central*

*Church,* 147 Mich. 230 [11 Ann. Cas. 150, 10 L. R. A. (N. S.) 74, 110 N. W. 951]; *McInerny* v. *St. Luke's Hospital,* 122 Minn. 10 [46 L. R. A. (N. S.) 548, 141 N. W. 837], but note that the effect of this decision is somewhat impaired by the remarks at the close of the opinion; *Hordern* v. *Salvation Army,* 199 N. Y. 233 [139 Am. St. Rep. 889, 32 L. R. A. (N. S.) 62, 92 N. E. 626]; *Kellogg* v. *Church Charity Foundation,* 203 N. Y. 191 [Ann. Cas. 1913A, 883, 38 L. R. A. (N. S.) 481, 96 N. E. 406]; *Basabo* v. *Salvation Army,* 35 R. I. 22 [42 L. R. A. (N. S.) 1144, 85 Atl. 120]; *Armendarez* v. *Hotel Dieu* (Tex. Civ. App.), 145 S. W. 1030; *Hospital of St. Vincent* v. *Thompson,* 116 Va. 101 [51 L. R. A. (N. S.) 1025, 81 S. E. 13].

It is said in the opinion in one of the cases last cited: "The doctrine that the will of an individual shall exempt either persons or property from the operation of general laws is inconsistent with the fundamental idea of government. It permits the will of the subject to nullify the will of the people. Nor can I conceive any ground upon which a court can hold that effect can be given to that will when it relates to property devised or conveyed for the purpose of a charitable trust. Such a holding must rest upon the argument that the advantages reaped by the public from such trusts justify the exemption; that is, as implied to this case, the advantages to the public justify defendant's exemption from liability for wrongs done to individuals. If this argument is sound—its soundness may be questioned, for there are those who will deny that the advantages to the public justify the wrong to the individual—it should be addressed to the legislative, and not to the judicial, department of the government. It is our duty as judges to apply the law. We have no authority to create exemptions or to declare immunity" (*Bruce* v. *Central Church, supra*).

In an opinion which contains an exhaustive review of the authorities the court concludes: "In view of the principles above set forth, this court is of the opinion that both upon reason and upon authority, so far as the cases directly apply to the case at bar, the defendant corporation, although it is a charitable corporation, is liable, as any other corporation, for injuries to third persons caused by the negligence of its servants and agents in the care and management of its horses and teams while employed for its pur-

poses. . . . We believe that public policy does not require any such exemption from liability as is claimed by the defendant in this case, but, on the contrary, that such exemption would be contrary to true public policy. . . . It would, in our opinion, be manifestly unjust and contrary to public policy to hold that a person run over and injured on a public highway by a horse and wagon belonging to the defendant and driven by the defendant's servant, through the negligent acts of such servant, would not be entitled to recover against the master, but could only recover against the negligent servant, while a person injured under similar circumstances by the servant of an expressman, or the driver of a cab belonging to a liveryman, would be allowed to recover against the master. There is no reason or logic in the attempted distinction between the servant of the defendant and the servant of any other person or corporation'' (*Basabo* v. *Salvation Army, supra*).

Another decision contains the following: ''This defendant, it appears from the evidence, conducted its affairs for the combined purposes of revenue and charity; the former being, in the religious aims of the members, subordinated to the latter as the ultimate object. But independently of this, had this corporation derived no revenues from its operations, and the funds which enabled it to carry on its benefactions were derived, not from its beneficiaries, but from endowments or contributions, it would not in our opinion make a particle of difference in its attitude to the law with reference to its legal duties and liabilities to persons in its service as employees. It was an incorporated body, chartered by its own volition, endowed with power to employ servants, and with the capacity to sue and to be sued. It was not in any sense an agency of the state, nor has the legislature seen fit to extend to such corporations exemption from the well-known duties and liabilities imposed by the general law governing master and servant. This being so, defendant would be liable for injury sustained by its employee due to the negligence, if any, of itself, its managing officers, or agents or vice-principals, which is the case presented here'' (*Armendarez* v. *Hotel Dieu, supra*).

In an excellent opinion, filed in one of the cases which adheres to the doctrine for which appellant contends, a dissenting justice said: ''The Young Women's Christian Asso-

ciation has been a powerful factor for good in every civilized community. To my mind it is repulsive to the very idea underlying the organization and its purpose to make claim to or grant immunity, especially where an injury is sustained through the negligence of a servant of the association by a stranger. What reason is there for immunizing an association of this kind on account of the negligence of its servants, and placing the entire consequences of an injury upon an innocent third person or upon the family of such innocent third person? The doctrine of responsibility for negligence is not solely based upon the doctrine of compensation, but has its primary source in a desire on the part of the public to secure careful and reasonable conduct. This latter doctrine is made applicable to nearly all the affairs of life, and it has resulted in raising the standard of human conduct. Any other doctrine leads to carelessness, neglect, and injury to mankind and property. For an association like the defendant to claim immunity from the negligence of its servants is like a minister of the gospel pleading the statute of limitations to avoid the payment of a just obligation. I think it is wrong in principle, is not in accordance with the prevailing doctrine in this country, and is not conducive to human welfare, and should not receive the sanction of this court" (*Bachman* v. *Young Women's Christian Assn., supra*).

[1] We thoroughly agree with the view taken by the courts which adhere to a doctrine contrary to that upon which appellant asks for a reversal of the judgment against it, and we can add but little to what they have said in their reasoning upon the question. The courts which have declared for the exemption of a charitable institution from liability for torts of which strangers to the charity are the victims have shown an unnecessary solicitude for the welfare of such organizations and of their beneficiaries. They have assumed dangers to the administration of charities which do not exist, or which are so paltry as to furnish no adequate ground for the exemption from liability which they declare, with its attendant injury to those suffering damages from torts, or to their families. It is not at all likely that prospective donors to charities will withhold their benefactions merely because the institutions to which they contemplate donations may be compelled to render that justice which the

law exacts from other corporations. Certainly, if any are thus held back they will be so few in number as not seriously to imperil the administration of charities generally. Then, too, the depletion of the funds which are actually subscribed to charities, through a refusal to allow the exemption, will be inconsiderable when the amounts necessary to pay judgments for damages are compared with the amounts actually devoted to the purposes for which charitable organizations are formed, that is, if the activities of all such organizations be considered together.

We are much impressed with the reasoning in one of the above quotations which is based upon the evident purpose of the law of torts to secure careful conduct on the part of those handling instrumentalities which, because of a lack of such conduct, may become engines of destruction. We think this state should not be added to the list of those whose courts have encouraged—as in some degree they surely have—the agents of charitable institutions to render less than due care for the security of life, limb, and property, the very things which it is the sole purpose of such institutions to preserve and protect.

Counsel expend much time in their briefs in considering the effect upon the present litigation of the opinions in *Thomas* v. *German Benevolent Society,* 168 Cal. 183 [141 Pac. 1186], and *Stewart* v. *California Medical Assn.,* 178 Cal. 418 [176 Pac. 46]. Whatever the effect of those opinions may be in proper cases—for they are opposed to each other—they have no bearing here. The expressions in them to which counsel refer are concerned with the question of the liability of charitable institutions for damages inflicted upon those who voluntarily become beneficiaries of the charities administered by such institutions—those, for instance, who become free patients in charity hospitals—and suffer injury through the negligence of the servants of the institutions. It is well settled, with practically no dissent, that in such cases the institutions are not liable, if, at least, they have been careful in the selection of the servants. Under practically all the authorities such a question is very different from the one here presented.

Judgment affirmed.

Thompson, J., and Johnson, J., *pro tem.,* concurred.