[Civ. No. 8874.   First Appellate District, Division One.—December 18, 1933.]

MAURICE M. O'MOORE, Appellant, v. PIUS M. DRIS-COLL et al., Respondents.

Henderson, Henderson & Hackley and Henderson, Henderson & Carey for Appellant.

Daniel A. Ryan, Thos. C. Ryan and James W. Harvey for Respondents.

McNUTT, J., *pro tem.*—Plaintiff (appellant) sued four defendants for damages for false imprisonment, two of whom were impleaded individually. After demurrer to the

complaint had been overruled and they had answered, two defendants, Province of the Holy Name, a corporation, and Pius M. Driscoll, as Prior Provincial thereof, moved for judgment on the pleadings and the motion was granted.

Appellant assails the procedural propriety of entering judgment on the pleadings after the disallowance of the demurrer. He argues that though the right so to move is clear when the complaint fails to state a cause of action, "the motion is to be. determined upon the same principles as would be a demurrer to the complaint upon the same ground" (*Hibernia Savings & Loan Soc.* v. *Thornton,* 117 Cal. 481, at 482 [49 Pac. 573, 574]; *Evans* v. *Paige,* 102 Cal. 132, at 133 [36 Pac. 406]), and defendants were thereby permitted to "bring forward their objections by instalments". (Citing Bancroft, Code Pleading, vol. 1, p. 922, sec. 634.) In *De Courcey* v. *Cox,* 94 Cal. 665, at 669 [30 Pac. 95, 96], the court says that the consideration of such a motion after the overruling of a general demurrer was "an irregularity which it is better to avoid". Attention is not drawn to any authority prohibitive thereof.

Since a judgment on the pleadings is a judgment on the merits (21 Cal. Jur. 241), we shall examine the complaint to determine whether as to the moving defendants it states a cause of action. The personal or individual liability of no defendant is involved.

It is alleged that defendant Province of the Holy Name was and is a California corporation, with its place of business at San Francisco; that at pertinent times defendant Pius M. Driscoll was an ordained priest of the Roman Catholic church and the Prior Provincial of the Holy Name Province of the Order of Dominicans in California, and as such was president of the board of directors of the province; that on July 18, 1928, and long theretofore, plaintiff was engaged as a priest in said Catholic church, and as a professed Religious of the Dominican Order, a member of said province in California, and hence was entitled to preach the gospel and to minister to the people in said church in said order in said province, in accordance with his calling and conscientious beliefs; that on the 18th of July, 1928, at San Francisco, defendants Driscoll and Connolly and defendant Province of the Holy Name, *by its servants and agents, said Driscoll and Connolly,* maliciously and for the

purpose of hindering the plaintiff in his vocation ordered him to go immediately to an asylum at Montreal, Canada, at the same time exhibiting to him a document purporting to be signed by a high official of said church, containing a like command, which asylum is under the jurisdiction of the Catholic church and is maintained for the insane, the inebriate, the dope fiend and the epileptic. Plaintiff was so terrorized by intimations of dire consequences of disobedience that he went, arriving July 27th; that *defendants Driscoll, Connolly and the Province of the Holy Name, and each of them,* instructed the authorities at the asylum to hold plaintiff as a prisoner and subject to further instructions of the defendants; that he was therefore confined therein on the 27th of July, 1928, without his consent and against his will, and then and thereafter deprived from communicating with the outside world up to the 1st of August, 1930; that at all pertinent times Connors (and others named) were *employed by the defendants and each of them* for the purpose of making plaintiff confess that he had committed a *crime,* and at pertinent times the persons *so employed* ''were acting within the *scope* of said employment''; that on October 24, 1929, while he was confined as aforesaid the defendants Driscoll and the Province of the Holy Name and each of them, by *their said agents Connors* and others, surreptitiously administered drugs to plaintiff to obtain a confession from him that he had been guilty of the said act, and that because of the administration of said drugs the *defendants* ''by their agents as aforesaid'' obtained such confession of immorality against his will; some four days later during said imprisonment, *defendants Driscoll,* Connolly and the Province of the Holy Name *''by its agents Driscoll and Connolly as aforesaid'',* accompanied by said agents Connors et al., held plaintiff by force in the parlor of the asylum with them, and subjected him for hours to cruel treatment, by continually and persistently harassing and importuning him to sign documents which he alleges on information contained matters derogatory to his good name, and that they further threatened that, if he did not sign the second document or documents, the defendants Driscoll and the Province would produce the previously signed confession and *prosecute him criminally* upon the act therein acknowledged; that under these circumstances, together with threats of

continued restraint, he signed the second documents, the contents of which as well as the contents of the confession were false in fact; that from the 18th of July, 1928, to the 1st of August, 1930, by reason of the imprisonment plaintiff was unable to follow his calling. Damages are then assigned. (Italics ours.)

■ Appellant contends that the complaint does not clothe the corporate defendant with either religious or charitable character because count I alleges merely that it is a corporation, organized under the laws of this state with its place of business in San Francisco. That allegation, however, has no power to limit the other recitals of the complaint, from which the inference is irresistible that the corporate defendant is a Province of the Dominican Order within the Catholic church.

Viewing the defendant order as a charitable or religious institution or trust, may *its* liability for the acts complained of be inferred from the allegations of the complaint? Were the acts pleaded so essentially matter of ecclesiastical discipline, as urged by respondents, as to be irremediable in a court of civil jurisdiction? The latter of these questions would seem to answer itself. ■ The wringing of false confessions (and the complaint says they were) of criminal conduct, from a detained person, under pressure of threat of criminal prosecution, cannot be said to fall within the category of ecclesiastical discipline. Matter of discipline, also tortious, might give rise to a cause of action where alleged facts showed that it was within the scope of the corporation's purpose, and was done to further such purpose. There is no doctrine of exoneration of a charitable or religious order from civil responsibility for acts done within the scope of its corporate province, grounded upon the mere dedication of itself or of its funds to a charity (except a case in which negligence of the charity's employee is by implied contract that of the injured person's own employee, a subject apart from this discussion).

■ The pleading discloses the religious or charitable character of the defendant order. If it did not, the court could by application of the doctrine of judicial notice so find. "It is not necessary to allege facts of which the court will take judicial notice. Such facts will be considered by the court, although not pleaded." (*French* v. *Senate*, 146 Cal.

604, at 607 [80 Pac. 1031, 1033, 2 Ann. Cas. 756, 69 L. R. A. 556].) Resort to such doctrine fortifies the conclusion to be drawn from the complaint; namely, that the Catholic church, the Order of Dominicans therein, and the Province of the Holy Name thereof, are generally dedicated to the propagation and promulgation of Christian doctrine and the gospel through the medium of Catholic priests of the Dominican Order. Authority is hardly necessary to support the proposition that the Catholic church, the Dominican Order and the Province of the Holy Name are and each of them is a religious (or charitable) institution, and that its properties are dedicated to religious and/or charitable purposes, in the absence of any allegation to the contrary. "The support and propagation of religion is clearly 'a charitable use'." (Pomeroy's Equity Jurisprudence, sec. 1021, par 1.)

In *Estate of Fitzgerald*, 62 Cal. App. 744, at 750 [217 Pac. 773, 776], it is said: "A gift to a church is a charitable one, for it is well settled that a Christian church lawfully existing is a charity. A gift to a church without restrictions as to the use to be made of the property is a gift to be applied for the promotion of public worship and of religious instruction, which must necessarily influence other than church members, and has all the elements of a public charity." " . . . 'that the Roman Catholic church is a Christian church, organized not for profit but for religious purposes and to promote the worship of God and to administer to the spiritual needs of mankind and to bring mankind under the influence of religion, and to that end the said Roman Catholic Church follows and spreads the teachings of Jesus Christ, as expounded in the Holy Bible.' " (*Estate of Fitzgerald, supra*, at p. 749.)

Do the facts alleged show, either that the defendant Pius Driscoll in a representative capacity *was acting within the scope of his authority* as agent of the religious organization or trust, or that the acts said to have been done by him in such capacity were within the performance of any duty imposed upon him by the trust or looked to the accomplishment of any purpose of the trust?

It is alleged that at all times Driscoll was the president of the board of directors of the defendant; that the defendant Connolly was at all times a representative of the defendant

Order and was "at all times herein mentioned acting *for and on behalf of said corporation*". (Italics ours.) Paragraph V contains matters of inducement; that defendants Driscoll, Connolly and defendant Province are said to have instructed the asylum authorities to hold plaintiff subject to further order; that in consequence he was held. Paragraph VII recites that Connors and others were "employed by said defendants and each of them" for the purpose of obtaining a confession, and that at all of the times in the complaint mentioned. Connors and others "were acting within the scope of said employment". In paragraph VIII it is alleged that while plaintiff was confined at Montreal the defendants Driscoll and Province of the Holy Name and each of them "by their said agents" Connors and others committed certain tortious acts. " . . . said defendants and each of them by their agents as aforesaid" succeeded in getting a confession. In paragraph IX it is said that while he was imprisoned "defendants Driscoll, Connolly and Province of the Holy Name by its agents, Driscoll and Connolly as aforesaid, accompanied by said agents, H. J. Connors" and others were guilty of further aggressions upon plaintiff, and that "defendants Driscoll, Connolly and Province . . . as aforesaid" produced the signed confession and threatened criminal prosecution unless plaintiff signed further documents, and said defendants Driscoll, Connolly and the Province as aforesaid threatened to keep plaintiff in the asylum as a prisoner unless and until he signed the documents aforesaid. It is categorically alleged that Connors and others always acted "within the scope of said employment", which means no more than that they did what they were told to do.

Facts otherwise than as above reviewed disclosing any duties of the representatives of the Order are not pleaded; what is within the scope of those duties except as indicated does not appear. That tortious acts were done in the accomplishment of the purpose of the Order does not appear from allegations of facts, but to the contrary the facts alleged with or without the aid of judicial notice demonstrate that what occurred was not within the scope of the authority of representatives of the corporate enterprise and had no tendency to spread the gospel. Each allegation apparently relied upon to serve as a predicate for the conclusion that there was an agency is, *in itself*, but a statement of the

*conclusion of such agency.* To hold that because Connors and others executed the orders Driscoll gave them, the latter acted within the scope of *his trust* and hence bound the trust in giving the orders, would establish a vicarious responsibility without an immediate predicate in alleged facts.

In the case of *Barabasz* v. *Kabat,* 86 Md. 23 [37 Atl. 720] (Court of Appeals of Maryland), is illustrated an analogous situation so far as concerns the defendant Order and Driscoll in his representative capacity. Suit was brought against a priest and *against the Roman Catholic Archbishop of Baltimore,* a corporation sole, for assault and battery on the wife of plaintiff. The material facts are that the priest had ordered that no one should be admitted to services except upon presentation of a ticket; the congregation was advised where tickets might be obtained. He hired a doorkeeper whom he instructed to admit those presenting tickets and to keep out those who had none. Plaintiff's wife sought entrance without a ticket and was ejected. At the conclusion of the testimony the court instructed the jury that there was no evidence to establish liability on the part of the defendant corporation, and the verdict was entered accordingly. The doorkeeper in admitting or rejecting applicants was held to have done so in the course of his employment, and therefore the priest personally might be liable. The court quotes from *Evans* v. *Davidson,* 53 Md. 245 [36 Am. Rep. 400], as follows: ''If the servant be acting at the time in the course of his master's service and for his master's benefit, within the scope of his employment, then his act, though wrongful or negligent, is to be treated as that of the master, although no express command or privity of the master be shown.''

The facts of this complaint do not show that Pius M. Driscoll (or Connolly) as a representative of the corporation was acting for the benefit of that corporation, or in execution of any corporate purpose, while to the contrary in the case of *Barabasz* v. *Kabat, supra,* the doorkeeper acted for the immediate personal benefit of the priest in saving him from the molestations or aggressions of obstreperous would-be attendants at service.

In *City of Louisville* v. *O'Donaghue et al.,* 157 Ky. 243 [162 S. W. 1110], action was brought by the city to recover the amount of a judgment paid by one Keller who had re-

ceived injuries as the result of an obstructed sidewalk in front of church premises. The trustee of the church property was named as a defendant. Demurrer was sustained and judgment dismissing the petition was affirmed. In the opinion we find: "Whether trust property can be subjected to liability growing out of the negligence or tortious act of the trustee is a question about which there is room for much difference of opinion, depending on the existence or nonexistence of certain facts, and we will not on this record undertake to announce any ruling on this subject, as the petition does not state a cause of action under which the trust estate could be subjected. It does not aver that Leinert as trustee at the time the negligent acts complained of occurred *was acting within the scope of his authority as trustee* or that he *was performing a duty imposed upon him by the trust.* In any state of case these averments would be indispensable to state a cause of action that would make the trust estate liable for the acts of the trustee." (Italics ours.) When pleaded facts show that a religious or charitable institution has committed a tort in line with the accomplishment of the purpose for which it exists liability appears. Cases relied on by appellant illustrate such instances.

In *Gallon* v. *House of Good Shepherd,* 158 Mich. 361 [122 N. W. 631, 633, 133 Am. St. Rep. 387, 24 L. R. A. (N. S.) 286], the facts are that the society was organized for the moral reformation of girls and women and the preservation in a state of purity of girls and women whose virtue is exposed to danger. Its buildings and premises "are erected and arranged with the purpose of detaining those whom it desires to detain. It is intended that girls confided to the institution shall remain until discharged." Plaintiff was against her will imprisoned therein and recovered damages therefor. Corporate liability was predicable because the institution was organized to detain young women, and the place of detention was maintained by the defendant for the accomplishment of the corporate purpose. Naturally the agents of the defendant acted within the scope of their authority in locking her up and in detaining her because they were thereby committing the corporation to acts and to a course of conduct in line with this organic purpose.

In *Phoenix Assur. Co., Ltd.,* v. *Salvation Army,* 83 Cal. App. 455 [256 Pac. 1106], a cognate situation in fact appears, and the court held that a charitable corporation is as liable as any other corporation for personal injuries to third persons caused by the negligence of its servants and agents in the operation of an automobile used for the purpose of engaging in a part of the religious and charitable work which it is the object of such corporation to perform. " . . . the record shows that at the time of the occurrences out of which the action arose the driver of the automobile was proceeding from one city to another for the purpose of engaging in a part of the religious and charity work which it is the object of appellant to perform."

To the same effect is *Basabo* v. *Salvation Army,* 35 R. I. 22 [85 Atl. 120, 42 L. R. A. (N. S.) 1144], (Supreme Court of Rhode Island), where it is held that a charitable corporation is as liable as any other corporation for injuries to third persons caused by the negligence of its servants in driving its teams for the distribution of its food and charities because its agents at the time were employed for corporate purposes.

The case of *Armendarez* v. *Hotel Dieu,* (Tex. Civ. App.) 145 S. W. 1030, cited by appellant, announces nothing to the contrary of the views hereinabove expressed as determinative of the liability of respondents.

The scope of respondent Driscoll's authority to bind the corporate Order is limited by the only pleaded purpose of the Order; namely, to spread the gospel. To imprison one for crime or to obtain a confession of crime under threats of prosecution in court, meanwhile holding him in an asylum not under respondent's jurisdiction or conducted by it, and not maintained for such purpose, is not to accomplish respondent's organic charitable object. True, as said in *Lovell* v. *Marshall,* 162 Minn. 18 [202 N. W. 64], there is a general allegation of agency, but the same is limited by the allegations of specific facts supposed to give rise to the agency. The general allegation is in the nature of a conclusion of law and, if not sustained by the specific facts pleaded, it will be disregarded.

In the case of *Davis* v. *Houghtelin et al.,* 33 Neb. 582 [50 N. W. 765, 14 L. R. A. 737], the sufficiency of the petition turned upon whether it charged that the act of killing

Davis was done in the prosecution of defendant's business and within the range of the servant's employment. It charged that Ireland was employed by defendants to guard certain feed belonging to them upon their premises and to seize and detain persons who might disturb such feed. "This is the only allegation of fact in the entire pleading relating to the nature and scope of Ireland's employment." It was further averred that the deceased had occasion to go on defendant's premises and while there Ireland, in attempting to seize and detain him, negligently shot and killed him. There was no allegation that deceased was molesting the feed or attempting to do so, or that it was part of Ireland's duty to arrest persons who happened to be on the premises except those who were there for a specific purpose. Held that the averment that Ireland " 'was acting for said defendants in the due course of his employment as aforesaid, and, pursuant to his instructions and orders, attempted to seize and detain' " Davis is a mere conclusion and not a statement of fact showing that the attempted detention was within the range of Ireland's duties.

The complaint does not state a cause of action as to the respondents, therefore the judgment should be affirmed where a procedural irregularity is the only apparent error.

The judgment appealed from is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 12, 1934.