## FREDERICK JOHN LOEFFLER

*vs.*

## THE TRUSTEES OF THE SHEPPARD AND ENOCH PRATT HOSPITAL, A BODY CORPORATE.

*Trust funds: charitable institutions; hospitals; negligence; damages not recoverable against—.*

Damages can not be recovered from a fund held in trust for charitable purposes.                              p. 273

*Decided February 2nd, 1917.*

Appeal from the Baltimore City Court.  (STANTON, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Michael P. Kehoe* and *H. Arthur Stump. Jr.,* for the appellant.

*Julian S. Jones,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

This suit was brought by the appellant against the Trustees of the Sheppard and Enoch Pratt Hospital, a body corporate, to recover for injuries alleged to have been caused by the negligence of the defendant.

The *narr.* alleges that the defendant was the owner of the premises known as 121 West Baltimore street, and that the plaintiff was "employed in the fire department of Baltimore City"; that on the 14th of December, 1912, the plaintiff with other members of his company was ordered to the defendant's premises for the purpose of putting out a fire in the rear of its building; that after the fire had been gotten under control, he was ordered to lower the fire escape, and that in order to do so he stepped on the fire escape and while going up the same to lower the ladder, the ladder, because of its defective condition, which was known or should have been known to the defendant, slipped and broke his arm in several places.

The defendant filed the general issue plea and two additional pleas. The second plea avers that the defendant was incorporated by the Act of 1853, Chapter 274, at the instance of the late Moses Sheppard of Baltimore City, who by his last will and testament bequeathed and devised to the defendant "large and valuable property" for the purpose of founding and maintaining an asylum or hospital in which the insane poor, and those suffering from mental and nervous diseases, could be treated, and that the late Enoch Pratt of Baltimore City, died in 1896, leaving a will by which he gave the residue of his estate to the defendant with directions that the income therefrom should be used in the first instance to complete the defendant's buildings and for the erection of such other buildings as would accommodate not less than two hundred additional inmates, and that thereafter the income should be devoted to the cure of the indigent insane. The plea then alleges: "That ever since the said asylum or hospital has been so put in operation, in December, 1891, it has been conducted under the said charter as an asylum or hospital, in which the indigent insane, and those suffering from mental and nervous diseases are received and treated, and while so conducting the said asylum or hospital, the defendant has made provision for the reception and treatment of a

limited number of patients who are able to make compensation for the room and attention they require; that all of the money needed to pay the expenses of the management and operation of the said asylum or hospital is supplied by the income derived from the investments of the money and the property devised and bequeathed to it by the last will of Moses Sheppard, and by the last will and testament of the late Enoch Pratt, and from several small donations and bequests from other persons, and by the money received from the limited number of patients who are able to make compensation for the room and attention they may require, all of which funds form the common fund out of which the expenses of the management and operation of the said asylum or hospital are paid; the said defendant corporation has not at any time ever had any stockholders and that none of the Trustees of the said corporation receive any compensation of any kind for themselves as such trustees, and all of the funds and revenues derived by the said corporation from the investments of its property, and from such patients as pay for room and attention afforded them in the said asylum or hospital, are applied and apportioned either to the payment of the salaries of the physicians, surgeons, servants and agents necessary and required for the proper operation and management of the said asylum or hospital, or to the payment of the other expenses necessarily involved in the management, operation and development of the said asylum or hospital, so as to enable the said defendant to provide in the said asylum or hospital for the reception and treatment without charge of indigent insane and indigent persons suffering from nervous and mental diseases, without regard to age or sex, and that all of the funds are held in trust solely for the charitable purposes above set forth. That the premises described in the declaration as 121 West Baltimore street constitute a part of the trust estate held by the defendant for the said charitable purposes as above set forth, and that the fire escape mentioned in the declaration was erected and constructed by

an experienced, skillful and competent contractor, and the work was done by experienced and competent mechanics."

The third plea, which alleges that the "defendant is a corporation, duly incorporated under the laws of the State of Maryland, for the charitable purpose of organizing and conducting an asylum or hospital in which the indigent insane, and those suffering from nervous and mental diseases, may be treated," contains substantially the same averments in regard to the sources of the defendant's income, the application thereof, its title to the property 121 West Baltimore street and the construction of the fire escape.

The plaintiff demurred to the second and third pleas, but the Court overruled the demurrer, and the plaintiff having declined to reply to these pleas, judgment was entered for the defendant. From that judgment the plaintiff has appealed.

The defense relied on in this case is one that has given rise to much discussion and a great diversity of judicial opinion, not only as to the proper rule in such cases, but also as to the principle upon which it should be based.

In the case of *Tucker* v. *Mobile Infirmary Asso.*, L. R. A. 1915 D, 1167, decided in 1915, the Supreme Court of Alabama, dealing with the question as an open one in that State, says: "While it must be conceded that the great weight of authority in this country is in favor of exemption to an institution engaged in charitable work from liability for the torts of its servants or agents, yet there is some contrariety of opinion as to the principles upon which this result is rested, and varied reasons are given not at all consistent one with the other. For the purposes of this case these authorities may be grouped into three classes. One line of decisions would rest exemption from liability upon what might be termed 'the trust fund theory,' that is, that all funds of such institutions are held in trust for the particular charitable purpose, and that it is a breach of trust to apply them to any other purpose, and that the payment of damages due to the

negligence of the servants of the institution is not a purpose contemplated by the trust, and that therefore their funds cannot be diverted to the payment thereof.   Other authorities rest their conclusion, it seems, upon the theory that the rule of *respondeat superior* does not apply to such institutions, for the reason that the servants in the exercise of their duties are not engaged in the work which is for the benefit or profit of the master, and that such is essential to call for the application of this rule.   Still other authorities base their conclusion upon what might be termed an 'implied assent theory'; that is, that one who accepts the benefit of charity must be taken impliedly to have assumed the risk of negligent injuries caused to him by servants who have been properly employed or retained in his service, or to have waived liability of a charitable institution for injuries so received."   In that case, the Court, after an extended discussion of the cases supporting the several theories mentioned, rejected the doctrine of absolute exemption upon the "trust fund theory," and the theory that the rule of *respondeat superior* does not apply to such institutions, and while crediting the theory of "implied assent" with the weight of what it termed the more recent and best considered cases, held that a *paying patient* in a hospital, "conducted without stock or profit, in which indigent patients are treated without cost," could recover damages for injuries inflicted through the negligence of an attending nurse.

In the case of *Downs* v. *Harper Hospital,* 101 Mich. 555, 25 L. R. A. 602, where it was held that there could be no recovery against an eleemosynary institution for an injury to an inmate caused by the negligent or tortuous acts of its managers or employees, the Supreme Court of Michigan said: "If the contention of the learned counsel for the plaintiff be true, it follows that the charity or trust fund must be used to compensate injured parties for the negligence of the trustees, or architects and builders; upon whose judgment reliance is placed as to plans and strength of materials; of physicians

employed to treat patients; and of nurses and attendants. In this way the trust fund might be entirely destroyed, and diverted from the purpose for which the donor gave it. Charitable bequests can not be thus thwarted by negligence for which the donor is in no manner responsible. If in the proper execution of the trust, a trustee or employee commits an act of negligence, he may be held responsible for his negligent act; but the law jealously guards the charitable trust fund, and does not permit it to be frittered away by the negligent acts of those employed in its execution. The trustees of this fund could not by their own direct act divert it from the purpose for which it was given, or for which the act of the Legislature authorized the title to be vested in the defendant. It certainly follows that the fund can not be indirectly diverted by the tortuous or negligent acts of the managers of the fund, or their employees, though such acts result in damage to the innocent beneficiary. Those voluntarily accepting the benefit of the charity accept it upon this condition. The fact that patients who are able to pay are required to do so does not deprive the defendant of its eleemosynary character, nor permit a recovery for damages on account of the existence of contract relations. The amounts thus received are not for private gain, but contribute to the more effectual accomplishment of the purpose for which the charity was founded." The later case of *Bruce* v. *Central M. E. Church,* 147 Mich. 233, holds that the rule announced in the *Downs case* only applies where the party seeking to recover is a beneficiary of the trust, and JUSTICE CARPENTER, speaking for the Court, says: "I conclude from this reasoning that corporations administering a charitable trust, like all other corporations, are subject to the general laws of the land, and can not, therefore, claim exemption from responsibility for the torts of their agents, unless that claim is based on a contract with the person injured by such a tort, and that *Downs* v. *Harper Hospital* and other similar cases are consistent with this rule. They rest upon the principle, correctly stated in *Powers* v. *Homoeopathic Hospital, supra* (47 C. C.

A. 122), viz., that the beneficiary of such charitable trust enters into a contract whereby he assumes the risk of such torts." In *Hordern* v. *Salvation Army,* 199 N. Y. 233, the Court of Appeals of New York follows the rule announced in *Bruce* v. *Central M. E. Church, supra,* and in the later case of *Schloendorff* v. *Society of New York Hospital,* 211 N. Y. 125, 52 L. R. A. n. s. 505, where the hospital surgeon operated against the wishes of the patient, the Court held the hospital not liable on the ground that the surgeon was not the servant of the defendant.

It is said in 5 R. C. L. 375, that by dividing the decisions into two classes, "those cases in which the injury was received by a person who, at the time, was a recipient of the benefit of the charity, and those cases in which the injury was inflicted on a stranger," it is possible to reconcile most of the decisions on the question. However that may be, what has been spoken of as the "trust fund theory" was adopted in this State in *Perry* v. *House of Refuge,* 63 Md. 20, without qualification, and has been followed and approved in the later decisions of this Court. In that case JUDGE YELLOTT, speaking for the Court, and referring to the funds of the House of Refuge, said: "These are the funds of the institution, controlled by the managers not for their own profit or benefit, but solely for the charitable purposes designated by its organic law. This, then, is an institution resting on an eleemossynary foundation. In *McDonald* v. *Mass. General Hospital,* 120 Mass. 432, it is held that a corporation deriving its funds mainly from public and private charity, and holding them in trust for the object of sustaining the hospital, without expectation or right on the part of those immediately interested in the corporation to receive compensation for their own benefit, is a public charitable institution; and where it has exercised due care in the selection of its agents, it is not liable in an action for injury caused by their negligence." After quoting the language of LORD COTTENHAM, LORD BROUGHAM and LORD CAMPBELL in *Heriot Hospital* v. *Ross,* 12 C. & F. 507, JUDGE YELLOTT said further: "In the ab-

sence of any decisions in Maryland, we are constrained to adopt the exposition of principles by these eminent English judges, and are thus led to the determination that damages can not be recovered from a fund held in trust for charitable purposes. In the language of LORD CAMPBELL, 'the wrong-doer must pay from his own pocket.' " In *Weddle* v. *School Commissioners*, 94 Md. 334, where the action was brought against the Board of County School Commissioners of Frederick County to recover damages for the death of a child while a pupil in one of the public schools of the county alleged to have been caused by the negligence of the defendant in allowing a wire to be strung across the school lot against which the child ran and was injured, the Court, through JUDGE BRISCOE, said: "There is no power given the Boards of School Commissioners to raise the money for the purpose of paying damages, nor are they supplied with means to pay a judgment against them. All of their funds are appropriated by law to specific purposes and they can not be diverted from them. The Constitution of the State, section 3, Article 8, provides that the school fund of the State shall be kept inviolate and appropriated only to the purposes of education. In *Perry* v. *House of Refuge*, 63 Md. 27, this Court distinctly held, in adopting the English decisions on the subject, that damages could not be recovered from a fund held in trust for charitable purposes." In *Martin* v. *Moore*, 99 Md. 41, *Perry* v. *House of Refuge*, is again referred to as authority for the proposition that "a corporation instituted for charitable purposes can not be made liable in an action for damages for an assault committed by one of its officers," and in the case of *State* v. *Rich*, 126 Md. 643, decided in 1915, this Court, speaking through JUDGE URNER, said: "In the case before us it can not be successfully contended that the State Roads Commission can rightfully apply any of the funds in its hands to the payment of claims for personal injuries, or that it is invested with any authority to raise money for that purpose. The plain and explicit provisions of the law defining the powers of the Commission,

and directing the application of its funds, effectually prevent such a conclusion. * * * The right of a person assaulted by an officer of the House of Refuge to maintain an action therefor against that institution was denied in *Perry* v. *House of Refuge,* 63 Md. 20, the theory of the decision being that 'damages can not be recovered from a fund held in trust for charitable purposes.' The ruling in that case was cited in *Weddle* v. *School Commissioners, supra,* as supporting by analogy the conclusion that a Board of School Commissioners is not suable in tort because the funds it administers are fully appropriated by law to uses which do not contemplate such a liability."

It is true, in *Perry* v. *House of Refuge* the assault for which damages were sought was committed upon an *inmate* of the institution, but the decision was not based upon the doctrine of "implied assent," waiver or assumed risk by the beneficiary of a charitable trust. It was made to rest upon the principle that trust funds can not be diverted from the purposes to which they are devoted by the terms of the trust, and it was in recognition of that principle only that *Perry* v. *House of Refuge* was cited and relied upon by this Court as authority for the conclusions reached in *Weddle* v. *School Commissioners, supra,* and *State* v. *Rich, supra.*

It is suggested by the appellant that the case of *Heriot Hospital* v. *Ross,* 12 C. & F. 507, relied upon in *Perry* v. *House of Refuge,* was overruled in *Mersey Board* v. *Gibbs,* 14 L. T. Rep. 677, and that the further decisions in Massachusetts show that the doctrine announced in *McDonald* v. *Mass. General Hospital,* 120 Mass. 432, referred to in *Perry* v. *House of Refuge,* was not intended to apply to injuries received by persons not beneficiaries of a charitable institution. It may be observed that the defendant in *Mersey Board* v. *Gibbs* was not a charitable institution in the sense in which the terms were used in *Perry* v. *House of Refuge,* and that in the case of *Farrigan* v. *Pevear et al.,* 193 Mass. 147, 7 L. R. A. N. S. 481, the Supreme Judicial Court of Massachusetts held that: "The rule *respondeat superior* does not apply

in case of trustees who are administering a fund created for the sole purpose of educating and maintaining indigent boys without recompense, who have exercised reasonable care to select competent servants." But whatever may be the present state of the English and Massachusetts decisions upon the question, the rule announced in *Perry v. House of Refuge* is firmly established in this State, and approved in *Parks* v. *Northwestern University*, 218 Ill. 381, 2 L. R. A. N. S. 556; *Williamson* v. *Louisville Industrial School of Reform*, 95 Ky. 251; *Leavell* v. *Western Ky. Asylum*, 122 Ky. 213; *Jenson* v. *Maine Eye and Ear Infirmary*, 107 Me. 408, 33 L. R. A. N. S. 141; *Adams* v. *University Hospital*, 122 Mo. Appeals, 675; *Whittaker* v. *St. Luke's Hospital*, 137 Mo. Appeals, 116; *Fire Insurance Patrol* v. *Boyd*, 120 Pa. 624; *Cable* v. *Sisters of St. Francis*, 227 Pa. 255; *Abston* v. *Waldon Academy*, 118 Tenn. 24; *Hill* v. *Tualatin Academy*, 61 Or. 190.

The facts set up in the defendant's second and third pleas and admitted by the demurrer constitute a bar to the plaintiff's action, and we must therefore affirm the judgment of the Court below.

*Judgment affirmed, with costs.*