BACHMAN, Respondent, vs. YOUNG WOMEN'S CHRISTIAN
ASSOCIATION, imp., Appellant.

*November 9—December 5, 1922.*

*Charities: Liability for torts of servants: Respondeat superior.*

The doctrine of the immunity of a public charitable institution
from liability to a patient within its walls for treatment from
the negligent acts of its servants, under the principle of
*respondeat superior,* is applicable as well to one who is a
stranger not receiving service or benefit from the institution,
and precludes one injured by a screen falling from a window
of quarters occupied by a Young Women's Christian Associa-
tion from recovering for his injuries from the association.
*Morrison v. Henke,* 165 Wis. 166, followed. DOERFLER, J.,
dissents.

APPEAL from a judgment of the circuit court for Mil-
waukee county: GUSTAVE G. GEHRZ, Circuit Judge. *Re-
versed.*

The Continental Realty Company is the owner of the
Alhambra Building at the corner of Fourth street and
Grand avenue in Milwaukee, and on the sixth floor thereof
the defendant *Young Women's Christian Association* used
and occupied certain rooms under lease. September 21,
1921, the plaintiff, during a severe wind storm and while on
the sidewalk near said building, was injured by being struck
on the head by a part of an adjustable, collapsible window
screen falling from one of the windows on the sixth floor
in a room under such lease. It was stipulated that the de-
fendant *Young Women's Christian Association* is a public
charitable corporation having no capital stock and operated
without private gain.

On the trial in the civil court it was found by special
verdict that the screen fell, proximately causing plaintiff's
injury, through the negligence of the defendant *Young
Women's Christian Association* and not by reason of any
extraordinary wind, and his damages were assessed at
$1,000.

Bachman v. Young Women's Christian Assoc. 179 Wis. 178.

During the trial a motion was made for a nonsuit as against the landlord, Continental Realty Company, which was granted, and the action was thereafter dismissed as to it. From judgment entered in the civil court in plaintiff's favor upon such verdict the defendant *Young Women's Christian Association* appealed to the circuit court. Such judgment was there affirmed. From the judgment of the circuit court the defendant has appealed.

For the appellant there was a brief by *Upham, Black, Russell & Richardson,* and oral argument by *Perry J. Stearns,* all of Milwaukee.

For the respondent there was a brief by *Glicksman, Gold & Corrigan* of Milwaukee, and oral argument by *Walter L. Gold.*

ESCHWEILER, J. This court in *Morrison v. Henke,* 165 Wis. 166, 160 N. W. 173, after a consideration of the various doctrines concerning, and the decisions of this and other jurisdictions on, the broad question there presented, decided that a charitable institution such as was the defendant hospital there, was not responsible in damages to a patient injured by reason of some want of ordinary care on the part of its employees. Such conclusion there reached is equally applicable to the situation and position of the appealing defendant in the present case and requires a reversal of the judgment.

It was properly and advisedly conceded on the trial of this case that the appellant here, *Young Women's Christian Association,* is a public charitable corporation and is not operated for private gain. It is therefore in the same class and stands on the same footing as do hospitals which are conducted as public charitable institutions and which particular form of charitable corporations were the defendants in most of the prior decisions on this subject.

In *Morrison v. Henke, supra,* upon the facts there presented the question was necessarily limited in its applica-

tion to whether or not there should be liability on the doctrine of *respondeat superior* to a patient who was within its walls for treatment. The question here presented is as to whether or not there shall be the same exemption from liability for negligence of the employees towards one who was a stranger, so far as receiving service or benefit from such charitable organization is concerned. Upon the principle of our decision in the former case we can see no reason why the same doctrine of nonliability should not apply to the stranger in this case as to the patient in the other. The fundamental reason why a charitable organization should not be held liable under the doctrine of *respondeat superior* is not based upon any situation that the injured person may occupy towards the charitable corporation, but upon the inherent and well recognized distinction between such charitable corporations, organized as they are with the primary and principal purpose of assisting the sick, unfortunate, or needy, or other instances of deserving humanity, and without provision for or expectancy of receiving financial returns for such particular service, compared with corporations which are primarily and principally organized for or in expectation of private gain.

The reason why, under the doctrine of *respondeat superior,* the liability incurred by the breach of the positive obligation of due care towards others which every responsible human being has resting upon him may be loaded onto others in addition to such defaulting human agent, has been recently and fully treated in the case of *Apfelbacher v. State,* 160 Wis. 565, 575, 152 N. W. 144, and needs no further discussion.

Because, therefore, of the nature, purpose, and functions of the defendant *Young Women's Christian Association* as master and employer of the negligent employee, who was individually responsible for the injury to the plaintiff in this case, and not because of any particular position the plaintiff here occupied towards the defendant, the liability

for this accident must rest, so far as plaintiff is concerned, on the negligent individual, where it of course primarily belongs, and it cannot be carried over as it would be were the defendant such a principal or master, as is the situation in the vast majority of other instances and cases.

We are satisfied, therefore, that this case comes within the scope and purpose of the spirit and basis of and for the decision in the *Morrison Case, supra,* and that it should and must control here.

The precise and narrower question here presented was decided at substantially the same time as was *Morrison v. Henke, supra,* and the same result reached, in *Loeffler v. Sheppard-Pratt Hospital,* 130 Md. 265, 100 Atl. 301, L. R. A. 1917D, 967, where the Maryland court held that a charitable organization was not liable to a third person who, as city fireman, was injured by the negligence of the hospital employees in maintaining a fire-escape in connection with the building. Although that case followed a prior holding of the same court and was based upon the so-called trust-fund doctrine, yet that in no manner lessens the weight to be given to or value of the result there reached. A similar decision as to nonliability of an institution of learning to one upon its premises as a visitor merely was made in *Hill v. Tualatin Academy,* 61 Oreg. 190, 121 Pac. 901.

In *Roosen v. Peter Bent Brigham Hosp.* 235 Mass. 66, 126 N. E. 392, 14 A. L. R. 563 (with note at p. 572), also a later case, the prior decisions of that court and other states were reviewed and the doctrine of nonliability of such charitable organizations was again affirmed, and it was further held that under the facts there presented there would be no liability even though the negligence relied upon for recovery was that of the association in negligently selecting incompetent servants. This holding was expressly reaffirmed in *Kidd v. Massachusetts H. Hosp.* 237 Mass. 500, 130 N. E. 55.

Again in the late case of *Emery v. Jewish H. Asso.*

(Ky.) 236 S. W. 577, although involving an action brought by an employee of such hospital, there was a full discussion of the many decisions, and that court expressly stated as its approved rule that such an institution was exempt from liability for the negligent acts of its managers, servants, or employees to any person whatsoever.

In *Deming Ladies' H. Asso. v. Price,* 276 Fed. 668, and *Nicholas v. Evangelical D. Home,* 281 Mo. 182, 219 S. W. 643, both subsequent cases, the rule of nonliability to a patient was again upheld.

We have not overlooked the subsequent decisions in *Mulliner v. Evangelischer Diakonniessenverein,* 144 Minn. 392, 175 N. W. 699, and *Marble v. Nicholas Senn H. Asso.* 102 Neb. 343, 167 N. W. 208, holding the contrary.

It follows from what has been said that plaintiff cannot maintain his action against the appellant, and this of course renders it unnecessary to discuss any of the other questions presented on this appeal.

*By the Court.*—Judgment reversed, and the cause remanded with directions to dismiss the complaint.

DOERFLER, J. (*dissenting*). In *Morrison v. Henke,* 165 Wis. 166, 170, 160 N. W. 173, in pronouncing in favor of the doctrine of immunity of a charitable hospital for the negligent acts of a servant, it is said:

"Since the hospital derives no profit from its work, and since it is founded for the sole purpose of conserving the health and life of all who may need its aid, and since it ministers to those who cannot pay as well as those who can, thus acting as a good Samaritan, justice and sound public policy alike dictate that it should be exempt from the liability attaching to masters whose only aim is to engage in enterprises of profit or of self-interest. The patient who accepts the services of such an institution, if injured therein by the negligence of an employee, must be content to look for redress to such employee alone. The principle

invoked is analogous to that which exempts municipalities from the rule of *respondeat superior* in the discharge of their governmental functions."

The first case in this country involving the immunity of a charitable hospital from liability to a patient on account of the negligence of a servant is *McDonald v. Massachusetts Gen. Hosp.* 120 Mass. 432, and the decision in that case is based upon an English case which at the time of the rendition of the decision in the *McDonald Case* had, without the knowledge of the court or counsel in the *McDonald Case,* been overruled by the House of Lords, and such doctrine was therefore at that time not the recognized doctrine in England. Following this decision in the *McDonald Case* are numerous cases in various courts of last resort in the states, where the doctrine of immunity was based upon various and different grounds. Some of the early cases were decided upon what is known as the trust-fund doctrine, under which it was determined that a charity fund could not be used to compensate injured parties because it would have a tendency to divert the fund to purposes not intended by the donor and because it would frustrate the purposes of the creators or founders of the fund. This doctrine has quite generally been repudiated in the United States, for reasons which are plain and which need not now be reiterated. 13 Ruling Case Law, p. 946, § 10, and cases cited under note 9.

Many of the courts based their opinions upon the so-called doctrine of public policy, and give as a reason that such institutions are inspired and supported by benevolence and devote their assets and energies to the relief of the destitute, sick, and needy, and that the common welfare requires that they should be encouraged and held exempt from liability for tort, and that to do otherwise would operate to discourage the charitably inclined, dissipate the assets of such institutions in damage' suits, and ultimately

destroy them. With respect to this doctrine, it is said in 13 Ruling Case Law, p. 945, § 9:

"In answer to this argument, however, it has been said that while the public has an interest in the maintenance of a great public charity, it also has an interest in obliging every person and corporation which undertakes the performance of a duty to perform it carefully, and to that extent, therefore, it has an interest against exempting any person and any such corporation from liability for its negligence, and that moreover it is solely for the legislature, and not for the courts, to say that the former interest is so supreme that the latter must be sacrificed to it."

This public-policy doctrine has been disapproved in *University of Louisville v. Hammock*, 127 Ky. 564, 106 S. W. 219; *Bruce v. Central M. E. Church*, 147 Mich. 230, 110 N. W. 951; *McInerny v. St. Luke's Hosp. Asso.* 122 Minn. 10, 141 N. W. 837; *Hewett v. Woman's Hosp. Aid Asso.* 73 N. H. 556, 64 Atl. 190; *Hordern v. Salvation Army,* 199 N. Y. 233, 92 N. E. 626; *Glavin v. Rhode Island Hosp.* 12 R. I. 411; *Basabo v. Salvation Army,* 35 R. I. 22, 85 Atl. 120; *Hospital of St. Vincent v. Thompson,* 116 Va. 101, 81 S. E. 13.

The third class of cases holding to the doctrine of immunity is based upon the implied-waiver doctrine, under which it is held that one who accepts the benefit either of a public or private charity enters into a relation which exempts his benefactor from liability for the negligence of his servants in administering the charity. In such cases it is said:

"There is an assumption of risk by the patient who seeks and receives the services of a public charity." *Powers v. Massachusetts H. Hosp.* 109 Fed. 294; 13 Ruling Case Law, p. 947, § 11.

In the *Morrison Case* (165 Wis. 166, 160 N. W. 173) this court rested its decision upon the doctrine that a hospital performs a *quasi*-governmental function, and for that

reason the doctrine of *respondeat superior* does not apply. From what has been said it will readily appear that the courts have labored under great difficulty at all times in justifying their attitude with respect to the question.

It is said in 5 Ruling Case Law, 376:

"A careful study of the decisions, however, is convincing that the doctrine of *respondeat superior* does apply though the business of the master is not carried on for the purpose of profit," citing cases under note 18.

The doctrine which is perhaps most generally recognized by the courts is the implied-waiver doctrine, being the doctrine of waiver by acceptance of benefits, and this doctrine only applies to patients. It has therefore been held that recovery could be had in favor of a stranger injured by reason of the unsafe condition of hospital premises, or by an employee's mechanic working on the hospital premises, or by one injured by the careless driving of a hospital's servant, or by an apprentice nurse put in charge of a patient suffering with a contagious disease without warning, whereby she contracted it. 13 Ruling Case Law, 949, and numerous cases cited in the notes.

While I do not agree with the decision in the *Morrison Case*, but assuming that the doctrine declared for therein is now the law in this state, the question arises whether it should be extended to immunize an institution like the defendant in the instant case. Exemption from liability for negligence in cases of private institutions should be founded solely upon acts of the legislature, and such exemption is particularly a province of the legislature. The legislature in this state has seen fit, in a number of instances, to exempt property of such institutions from taxation. Surely such exemptions would not have been within the proper field of determination for the courts. While hospitals, Young Men's Christian Associations, and similar institutions are actively engaged in the welfare of humanity and tend to

minister to the wants and ills of mankind, and to a large extent relieve the public from the performance of its duties in that regard, we cannot lose sight of the necessity of holding all persons amenable to the law with respect to the exercise of due care in the performance of their duties. In the course of time we have developed a complex industrial system. Human ingenuity has been active in inventing mechanical appliances and processes, all designed to relieve labor of its burdens and to secure greater efficiency. The automobile has become so common and its use so general that by far the greatest number of casualties reported spring from the use of that instrumentality. The number of fatal accidents resulting from the use of the automobile since the great war far exceeds the casualties resulting in death of our soldiers engaged in such war. By far the vast majority of those injured in industrial pursuits or in automobile accidents receive treatment in private charitable hospitals. As a matter of public policy, the question resolves itself as follows:

Under the present-day existing circumstances, is it a wiser policy to hold to the doctrine of immunity or to the doctrine of liability; and assuming that the doctrine of immunity shall be continued with respect to hospitals in regard to their patients, should such doctrine be extended to include injuries received by strangers?

The Young Women's Christian Association has been a powerful factor for good in every civilized community. To my mind it is repulsive to the very idea underlying the organization and its purpose to make claim to or grant immunity, especially where an injury is sustained through the negligence of a servant of the association by a stranger. What reason is there for immunizing an association of this kind on account of the negligence of its servants, and placing the entire consequences of an injury upon an innocent third person or upon the family of such injured person? The doctrine of responsibility for negligence is

not solely based upon the doctrine of compensation, but has its primary source in a desire on the part of the public to secure careful and reasonable conduct. This latter doctrine is made applicable to nearly all the affairs of life, and it has resulted in raising the standard of human conduct. Any other doctrine leads to carelessness, neglect, and injury to mankind and property. For an association like the defendant to claim immunity from the negligence of its servants is like a minister of the Gospel pleading the statutes of limitations to avoid the payment of a just obligation. I think it is wrong in principle, is not in accordance with the prevailing doctrine in this country, and is not conducive to human welfare, and should not receive the sanction of this court.

The immunity declared in the instant case is a corollary derived from the principle laid down in the *Morrison Case.* The error is in the premise, and therefore the final results are not true; but, in any event, the limits of the public-policy doctrine declared in the *Morrison Case* should have been there drawn, for if an exemption on the ground of public policy can be legally declared under the facts existing in the *Morrison Case,* such exemption can be judicially limited.

In this present day charity is administered mainly through the agency of corporations, which can act only by and through agents, so that the immunity doctrine in effect results in a license to commit irremediable torts; a doctrine which the plaintiff, an innocent traveler on the highway, injured through the negligence of the defendant's agents, resulting in epileptic fits—a rather serious human ailment,—will never be fully able to understand or appreciate. Charity from the modern viewpoint is an attribute of justice and springs from the Christian doctrine of service to mankind, and is not only a privilege but a duty, at least in the moral sense. The protection of life and limb by organized society is of greater importance to mankind than any species of

charity, and it is superior to the rights of property.. It would be better that all forms of private charity were abolished if it can be maintained solely at the expense of the life, health, and limb of the members of the community. The view that the doctrine of *respondeat superior* only applies where the agent performs services on account of which the master profits, may be in harmony with modern ideas of political economy, but such doctrine is not generally or universally approved by the courts; and it would seem to be a dangerous doctrine.

For the reasons stated I respectfully dissent from the majority opinion.