HENRY W. PUTNAM MEMORIAL HOSPITAL et al. v. ALLEN.

Circuit Court of Appeals, Second Circuit.
July 15, 1929.

No. 347.

Stickney, Sargent & Skeels, of Ludlow, Vt., E. L. Bates and Collin M. Graves, both of Bennington, Vt., and B. L. Stafford, of Rutland, Vt. (Edwin W. Lawrence, of Rutland, Vt., and Olin M. Jeffords, of Ludlow, Vt., of counsel), for appellants.

Edward H. Holden, of Bennington, Vt., and Walter S. Fenton, of Rutland, Vt., for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). This appeal was so ably briefed and argued that the court desires to express to counsel for both sides its appreciation of the assistance rendered by their admirable presentation of the issues. These relate, in brief, to (1) the court's refusal to compel the plaintiff to elect against which of the defendants she would proceed; (2) its ruling that the hospital as a charitable institution was not immune from liability for the negligence of its agent, Haynes; (3) its denial of a motion for a directed verdict on the ground of plaintiff's contributory negligence; (4) alleged errors in portions of the charge to the jury; and (5) certain rulings on evidence.

The motions of the defendants that the plaintiff be required to elect between them were based upon the theory that master and servant may not be sued jointly in an action of tort founded on negligence of the servant, where the master's responsibility results solely from the doctrine of respondeat superior and without his personal participation in the servant's tort. Upon this subject there is a split in the authorities, a minority of the jurisdictions holding as the defendants contend. See 39 C. J. 1314; Parsons v. Winchell, 5 Cush. (Mass.) 592, 52 Am. Dec. 745; French v. Construction Co., 76 Ohio St. 509, 81 N. E. 751, annotated in 12 L. R. A. (N. S.) 670; Warax v. Cincinnati, etc., Ry. Co., 72 F. 637 (C. C. Ky.). The reasons advanced for such holding are not convincing. The early cases stress the distinctions between actions in trespass and actions on the case (see Hewett v. Swift, 3 Allen [Mass.] 420, 424), distinctions which are of little importance in modern pleading. The argument that the master will lose his right of indemnity has no compelling force in states which permit the joinder. See Southern Ry. Co. v. Carson, 194 U. S. 136, 139, 24 S. Ct. 609, 48 L. Ed. 907. We prefer the view of the majority, if we are free to choose in this question of joinder, depending, as it must, upon local law. Chicago, R. I. & Pac. Ry. v. Schwyhart, 227 U. S. 184, 33 S. Ct. 250, 57 L. Ed. 473. The only expression on the subject in the Vermont decisions is an early dictum in favor of the right. Brown v. Lent, 20 Vt. 529, 531. In Burnett v. Larrow, 91 Vt. 190, 99 A. 729, an attempt was made to raise the point, but the court held it was not presented by the record. In Gutzwiller v. Am. Tobacco Co., 97 Vt. 281, 122 A. 586, the right of joinder went unchallenged. Consequently there is nothing which requires us to apply a different rule in Vermont from that which appears to obtain in the other states within this circuit (Phelps v. Wait, 30 N. Y. 78; Philips v. Winchester, 100 Conn. 12, 122 A. 792), as well as in a majority of the states outside. The better reason, as well as the trend of modern authority, seems to us to favor the right of joinder. There was no error in permitting the action to proceed against both defendants.

The court's ruling as to the liability of the hospital also involves a question of local law upon which the authorities are divided. Both parties agree that there is no controlling Vermont decision, so that we must determine for ourselves what rule to apply. Whatever may be the correct doctrine where the injured plaintiff is a recipient of the bounty of an eleemosynary institution, as, for example, a patient at a hospital (Powers v. Mass. Homœopathic Hospital, 109 F. 294 [C. C. A. 1]), or a student at a university (Parks v. Northwestern University, 218 Ill. 381, 75 N. E. 991, 2 L. R. A. (N. S.) 556, 4 Ann. Cas. 103), we have no difficulty in deciding that irresponsibility should not be extended to the tortious infliction of damage upon strangers. To hold that a charitable institution, whose agent negligently runs down a pedestrian upon the street, need not respond in damages, although the circumstances are such as would render any other defendant liable, seems to us a monstrous doctrine.

It is true that several courts of high authority have gone to this extreme. Foley v. Wesson Memorial Hospital, 246 Mass. 363, 141 N. E. 113; Loeffler v. Trustees, 130 Md. 265, 100 A. 301, L. R. A. 1917D, 967; Fordyce v. Woman's, etc., Library Ass'n, 79 Ark. 550, 96 S. W. 155, 7 L. R. A. (N. S.) 485; Hill v. Tualatin Academy, 61 Or. 190, 121 P. 901; Fire Ins. Patrol v. Boyd, 120 Pa. 624, 15 A. 553, 1 L. R. A. 417, 6 Am. St. Rep. 745; Bachman v. Y. W. C. A., 179 Wis. 178, 191 N. W. 751, 30 A. L. R. 448. But in our opinion no adequate reason has been, or can

be, advanced for allowing the purpose of the settlor of trust funds to introduce into the law a principle which, to us, appears so anomalous and so unjust. We prefer the reasoning of cases which have applied the ordinary rules of liability to such a situation as is now before the court. See Kellogg v. Church Charity Foundation, 203 N. Y. 191, 96 N. E. 406, 38 L. R. A. (N. S.) 481, Ann. Cas. 1913A, 883; Bruce v. Central M. E. Church, 147 Mich. 230, 110 N. W. 951, 10 L. R. A. (N. S.) 74, 11 Ann. Cas. 150; Basavo v. Salvation Army, 35 R. I. 22, 85 A. 120, 42 L. R. A. (N. S.) 1144; Hospital v. Thompson, 116 Va. 101, 81 S. E. 13, 51 L. R. A. (N. S.) 1025; Hewett v. Woman's Hospital Aid Ass'n, 73 N. H. 556, 64 A. 190, 7 L. R. A. (N. S.) 496; and annotation in 14 A. L. R. 575.

The defendants contend that the court erred in denying their motions for a directed verdict on the ground of plaintiff's contributory negligence. The collision occurred when the plaintiff's car was wholly within the north half of the street; that is, she had turned diagonally to the left into the path of the oncoming ambulance, which was approaching at a rapid rate of speed, sounding its loud Klaxon horn, and with nothing to impede her view of it. There is no evidence that she gave any signal of an intention to turn, or that she slackened her speed (estimated by several witnesses as at least 15 miles an hour) or applied her brakes at any time before the collision. Just before the impact, Haynes turned his wheels toward the right and stepped on the accelerator in an attempt to pass in front of the sedan, but his left front wheel and fender struck her right front wheel and fender. The argument is that these undisputed facts show irrefutably that, however reckless Haynes may have been, the plaintiff's own negligence contributed to the collision which produced her injuries.

Persuasive as this argument appears, counsel for the plaintiff has urged with greater persuasion, to our minds, that her negligence is not so clearly demonstrated as to justify withdrawal of the question from the jury. The ambulance as such was entitled to no special right of way—this the defendants concede—and plaintiff's conduct is to be judged as though the approaching vehicle had been an ordinary Cadillac automobile. A driver need not wait until the street is absolutely empty of approaching vehicles before turning across it. Unless the contrary is apparent, he may assume that oncoming cars will be driven at a legal rate of speed

and with due regard to others in the street. There was ample space for Haynes to pass to the rear of the sedan if he had chosen that course and had acted in time. According to the most favorable testimony, that of Miss Wells, plaintiff was driving "slowly" and began her turn when her sedan was about opposite the striped pole and when the ambulance was opposite the Wells house.

As shown by the map and testimony explaining it, these points are 260 feet apart, so that, had Haynes observed the plaintiff's turn at the same time as did this witness, he might have had sufficient time and space to avoid her. When she started to turn, her left wheels were close to the south trolley track and the ambulance was close to the north track; consequently each car had to move only a short distance to its left to enable Haynes' car to pass behind Miss Allen's. He was then 260 feet away, and the speed at which his car was approaching would be difficult for any driver in her position to have judged. Under these circumstances we do not think the court is required to hold as a rule of law that no prudent driver would have started the turn. Having started it, we cannot conclusively predicate negligence upon its continuance. The time was too short. At 50 miles an hour Haynes would have covered the 226 feet between a point opposite the Wells house and the place of collision in three seconds. Miss Allen in the meantime had moved forward but 34 feet. The jury might have found, if they accepted Miss Wells' testimony as accurate, that he was traveling more than six times as fast as she. Whether it was negligent to start the turn, whether, having started it, she thereafter omitted any proper precaution or did all that a prudent driver should have done, are questions which necessarily turn upon a determination of disputed estimates of speeds and distances. Such questions are for the jury, and carry with them for determination by the same body the question of the plaintiff's negligence. There was no error in denying the motions for a directed verdict.

Having left to the jury the question of contributory negligence, the court charged that if both plaintiff and defendant Haynes were negligent, and if the negligence of both created the perilous situation in which they were just before the collision, nevertheless, if there was a time just after such negligence occurred when Haynes could have prevented the collision but the plaintiff could not, then she can recover notwithstanding her negligence which contributed to the perilous situation. No complaint is, or could successful-

ly be, made of the accuracy of this charge (Lachance v. Myers, 98 Vt. 498, 129 A. 172); but it is urged that it is inapplicable to the facts of this case. The plaintiff's conduct in proceeding with unchecked speed down to the moment of impact is said to operate coincidentally with the negligence of Haynes until it became too late for him to have avoided the collision. The charge presupposes negligence on the part of the plaintiff which contributed to the creation of a perilous situation. Suppose the jury thought that Miss Allen turned across the street without ever seeing the oncoming ambulance, that she started her turn at a time when no prudent and careful driver would have done so, but that nevertheless Haynes could have avoided the collision, had he observed the turn at the same time as did the witness Wells, or even later than she, but sooner than in fact he did. There is evidence which would have supported such a finding, and on this hypothesis the charge would seem to be entirely appropriate.

■ Further complaint is made of the court's refusal to give a requested charge to the effect that if the plaintiff turned in front of the ambulance without giving warning, and if Haynes was thus confronted with an emergency without fault on his part, he should not be held to the exercise of the same degree of care as if he had had time for reflection. In denying the request the court stated that the charge already given was more favorable to the defendants than their request and inconsistent with it. The portion of the charge thus referred to told the jury that, unless Haynes was negligent in failing to discover plaintiff's peril and avoid the collision, there could be no recovery on the theory that Haynes had the last chance to avoid it. In other words, the charge required a finding of negligence by Haynes in discovering the emergency, while the request assumed that the emergency arose without fault on his part. Hence the refusal was harmless.

■ Finally, error is alleged as to testimony of Mrs. Allen regarding plaintiff's loss of memory concerning the accident. Some of it was perhaps objectionable as hearsay, though the objection was not made on that ground. Mrs. Allen could testify to conversations showing plaintiff's loss of memory; in short, to almost anything probative of such loss, except the bare statement of the plaintiff that she had lost her memory. Most of the testimony was clearly competent, and such of it as was not we cannot regard as prejudicial in any important sense. Another witness had previously testified without objection to plaintiff's loss of memory.

Judgment affirmed.