STATE, Use of CAVANAUGH, et al. v. THE ARUNDEL PARK CORPORATION, et al.

[No. 84, September Term, 1958.]

*Decided January 16, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*John J. O'Connor, Jr.,* with whom were *O'Connor and Preston* on the brief, for appellant.

*James P. Garland,* with whom were *William D. Macmillan* and *Robert D. Bartlett* on the brief, for appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment for costs in favor of four defendants: St. Rose of Lima Roman Catholic Church, Rt. Rev. Leonard J. Ripple, Roman Catholic Archbishop of Baltimore, a corporation sole, and the Holy Name Society of St. Rose of Lima Roman Catholic Church, after the trial court sustained demurrers to a second amended declaration. The original declaration, a death action for negligence arising out of a fire which occurred on January 29, 1956, at the St. Rose of Lima oyster roast held at Arundel Park in Anne Arundel County, was filed on December 11, 1956. Pleas were filed, and on July 26, 1957, an amended declaration was filed for the purpose of bringing in additional parties-defendant. Timely pleas were filed by all the defendants.

: In addition to the general issue pleas, the above-named defendants filed special pleas that they were non-profit "eleemosynary institutions" and, consequently, "immune from liability for damages" for the alleged torts of their agents, servants and employees. The legal basis for such a claim seems rather obscure, since it seems to be conceded that policies of liability insurance were then in effect. On October 14, 1957, the plaintiffs, with leave of court, filed a second amended declaration alleging that the above-named defendants "are insured, and are, accordingly, estopped from pleading eleemosynary immunity pursuant to the provisions of Art. 48A, section 82, of the 1951 Annotated Code of Maryland." This section was incorporated, without change, in Code (1957), Art. 48A, sec. 85. These defendants demurred to the second amended declaration on the ground that this constituted a "new or different cause of action" and that such new action was filed too late and hence barred by the death statute. The demurrers were sustained without leave to amend.

Under Code (1951), Art. 67, sec. 4 (the same provision is incorporated in Code (1957), Art. 67, sec. 4), an action for wrongful death must be brought within 18 months after the death of the deceased person. It is conceded that if the second amended declaration is to be regarded as a new cause of action, it was filed too late and the defect is open to demurrer. See *State v. Parks,* 148 Md. 477. The trial court held that although the original declaration was based upon negligence under the death statute, the second amended declaration was predicated upon the insurance statute and asserted a new cause of action. This statute, Code (1957), Art. 48A, sec. 85 (as enacted by chapter 900, Acts of 1947), provides: "Each policy issued to cover the liability of any charitable institution for negligence or any other tort shall contain a provision to the effect that the insurer shall be estopped from asserting, as a defense to any claim covered by said policy, that such institution is immune from liability on the ground that it is a charitable institution."

Although the statute merely prescribes a mandatory policy clause, which in terms raises an estoppel against the insurer from asserting the defense of immunity, we have said that the statute has the effect of raising an estoppel against the insured to the extent of the coverage. In *Gorman v. St. Paul Fire Ins. Co.,* 210 Md. 1, 7, we squarely held that the statute did not contemplate or permit a direct action by a tort claimant against the insurer. In answer to the contention that such a construction would nullify the statute, we stated that the Legislature probably had in mind the fact that an insurer under a liability policy normally conducts the defense, and that the estoppel was intended to run against the insured, to the extent of the collectable insurance, and to that extent only. Evidently the Legislature took notice of the growing practice whereby charitable institutions voluntarily procure liability insurance for the protection of persons injured through the negligence or other torts of their agents, servants or employees, and sought to assure to such persons the full benefit of the coverage procured, without disturbing the existing rule under other circumstances. See *Howard v. South Balto. Gen. Hosp.,* 191 Md. 617, and *Thomas v. Prince George's*

*County,* 200 Md. 554, 560. In carving out this exception, the Legislature may well have had in mind the fact that, except to the extent of the premiums voluntarily paid, there would be no invasion of trust funds, upon which the rule of immunity was largely predicated. See *Perry v. House of Refuge,* 63 Md. 20, 28 and *Loeffler v. Sheppard-Pratt Hosp.,* 130 Md. 265, 274. The trust fund theory has been repudiated in a growing number of states. See note 25 A. L. R. 2d 29, 60, and supplementary cases cited. In *Taylor v. Knox County Board of Education,* 167 S. W. 2d 700 (Ky.) the Kentucky court held that the similar Kentucky statute permitted action against the insured to the extent of the collectable insurance, construing the Kentucky statute in the light of another statute authorizing school boards to procure liability insurance to cover the transportation of school children. This case was cited with approval in the *Gorman* case. The case of *Rogers v. Butler,* 92 S. W. 2d 414 (Tenn.), also cited in the *Gorman* case, reached the same result even in the absence of statute. But later cases in other states seem to have declined to extend the exception so far. See *Holland v. Western Airlines,* 154 F. Supp. 457, 460, and cases cited. Cf. *Williams' Adm'x v. Church Home for Females, Etc.,* 3 S. W. 2d 753 (Ky.) cited in the *Thomas* case, *supra.*

Our statute, as construed, poses a number of procedural problems. If the mere fact that liability insurance has been procured, a fact which could be ascertained, if unknown to the injured person, through discovery or interrogatories, is enough to raise the estoppel, and prevent immunity from being asserted as a defense, *pro tanto,* then it might be argued that there would be no need to allege such fact in the declaration. Upon that hypothesis the amendment might be regarded as surplusage. If it must be alleged in the declaration, and proved as a part of the plaintiff's case, this would seem to run counter to the general rule that, since a reference to insurance by the plaintiff tends to confuse the issue of negligence and have a prejudicial effect upon the jury, such reference may be ground for reversal. We note that in several recent cases the insurance carriers have preferred to remain *incognito,* and have not sought to raise the issue of

immunity under the pleadings. See the references to the companion case in the *Gorman* case, *supra,* and *Casey v. Roman Catholic Arch.,* 217 Md. 595, 608, 613. It would appear that, in practice, several different methods have been used to restrict the recovery to the amount of the insurance coverage, without permitting the fact of insurance to be put before the jury.

For present purposes we need not attempt to resolve any of these problems. The appellees did not demur to the original or first amended declaration, but filed pleas raising the issue of immunity. The appellants did not file motions *ne recipiatur* to the pleas, or to strike said pleas, or move for summary judgment on that issue under Rule 610 d 3 of the Maryland Rules, or file replications to the pleas. Instead, they filed a second amended declaration, setting up the fact of insurance. The demurrer to this amended declaration did not attack the allegation of insurance, but on the contrary, relied upon it as the statement of a new and different cause of action. The defendants argue that it is a new cause of action because the statute, in effect, created a liability that did not previously exist.

The appellees rely strongly upon *Cline v. Fountain, Etc., Company,* 214 Md. 251. We there held that an amended declaration, which relied upon an alleged oral joint adventure agreement, whereas the original declaration relied upon an oral lease agreement, set up a new cause of action. See also the comment on the case in 18 Md. L. Rev. 161. We think the case is readily distinguishable. In the instant case the theory of the action has always been and still is based upon negligence under the death statute, and the only change is in the allegation which, in effect, anticipates a defense raised by the pleas of immunity to the first amended declaration. Ordinarily, a pleader is not required to anticipate a defense. 1 Poe, *Pleading & Practice* (Tiffany's ed.) § 555. If we assume, without deciding, that the former declaration was open to demurrer for failure to negative the defense, it does not follow that the amendment changed the cause of action.

In *Brooks v. Childress,* 198 Md. 1, an action for negligence under the death statute, the declaration alleged liability on

the part of a father, on the ground that his son was his agent and servant. Finding no evidence to support this allegation, we nevertheless held that the trial court should have permitted an amendment asserting imputed negligence, a liability created by the motor vehicle laws in the case of certain minors. We squarely held that the amendment did not set up a new cause of action. We relied strongly upon *Zier v. Chesapeake Ry. Co.*, 98 Md. 35. See also *Lichtenberg v. Joyce*, 183 Md. 689. These cases illustrate the rule that a different statement of a cause of action does not constitute a new or different cause of action. We find no such change in the instant case.

The appellees also rely upon *Union Pacific Railway v. Wyler*, 158 U. S. 285, where the fact that the original declaration was based on the common law, and the amended declaration on a statute, was held to be determinative. We think that is not the situation in the instant case. The original declaration was not based on the common law, for at common law the charitable character of these defendants would have precluded recovery, if a defense based on immunity were raised. At most, the original declaration, if .defective at all, was defective simply in failing to allege the fact of insurance which, under the insurance statute, raised an estoppel *pro tanto*. The amendment supplying that allegation was not the statement of a new or different cause of action, but the statement of the same cause of action, with an amendment to spell out in detail the basis of the alleged liability. The change in the *Wyler* case was from a recognized common law liability to a statutory one. Moreover, the *Wyler* case was rested upon a test as to whether, under common law pleading, the new matter would constitute a departure. This test does not seem to have been applied in the Maryland cases, and the holding seems inconsistent with our decision in the *Brooks* case, *supra*. It may also be noted that the *Wyler* case seems to have been limited, if not overruled, by later Supreme Court cases. See *Mo., Kans. & Tex. Ry. v. Wulf*, 226 U. S. 570; *U. S. v. Memphis Cotton Oil Co.*, 288 U. S. 62; and Clark, *Code Pleading* (2d ed.) p. 719 *et seq.* and 730.

For the reasons stated, we hold that the trial court erred in sustaining the demurrers to the second amended declaration.

*Judgment reversed and case remanded for further proceedings, costs of this appeal to be paid by the appellees.*